294 So.2d 444

David SHIFLETT

v.

STATE.

7 Div. 232.

Court of Criminal Appeals of Alabama.

Oct. 30, 1973.

Rehearing Denied Dec. 4, 1973.

William J. Baxley, Atty. Gen., Montgomery, and Alston Keith, Jr., Special Asst. Atty. Gen., Selma, for the State.

Love, Love & Lawrence, Talladega, for appellant.

**478**

DeCARLO, Judge.

David Shiflett was convicted of selling marijuana and was sentenced to seven years imprisonment.

On November 24, 1972, Sgt. Robert Patterson of the Alabama Public Safety Department and an informer went to the home of appellant where Sgt. Patterson purchased one lid of marijuana from him.

After return of an indictment, the appellant was arrested on December 22, 1972.

## I

Appellant first complains that the trial court erred in interrupting defense counsel during the trial, assuming control of the examination of a witness, and in sustaining objections to defense counsel's questions when no objection was made, all of which indicated a biased attitude on the part of the trial judge against the accused.

One basic principle underlying our judicial procedure is the discretionary power vested with the court in conducting a trial. Carson v. State, 49 Ala.App. 413, 272 So.2d 619. As early as 1877, the Alabama Supreme Court commented on this discretion in Sparks v. State, 59 Ala. 82:

"It is the duty of a presiding judge, in all cases, civil or criminal, to give strict attention to the evidence. And it is also his duty, to propound to the witnesses such questions as he may deem necessary to elicit any relevant and material evidence, without regard to the effect of such evidence, whether it may benefit or prejudice the one party or the other—the development and establishment of the truth, is his purpose and duty."

Presiding Judge Bricken in Dennison v. State, 17 Ala.App. 674, 88 So. 211, again emphasized this fundamental authority when he stated:

"The trial judge, as a natural consequence of his position and the many duties devolving upon him, is necessarily vested with much discretion in the conduct of the trial of causes, and, unless it clearly appears that there has been an abuse of this discretion, appellate courts will not interfere to control such discretion, but will presume that one occupying so important a position as that of circuit judge will accord to all litigants in his court the fair and impartial trial provided for in the Constitution of this state."

When examined separately and apart, the instances complained of by appellant leave some doubt as to the impartiality of the court's actions, but when viewed in the context of the surrounding testimony, clearly no abuse is shown. Appellant specifically complains of a comment made by the Judge during the following testimony of Sgt. Patterson:

"Q. (Prosecutor) And if his identity was known would you be in fear of him suffering bodily harm or losing his life?

"MR. LOVE. (Defense Counsel) Now I object to that if it please the Court.

"Q. Well, that's limited just for the purpose—of course unless Mr. Love was going into his identity we'll withdraw the question—at this time—and let the Court inquire into those matters.

"MR. LOVE. I'm certainly objecting.

"THE COURT: This is a confidential informer?

"A. Yes, sir.

"THE COURT. Do you know whether this individual fears for his life—if his identity was—

"A. Yes, sir.

"MR. LOVE. Now if it please the Court I'd like to except to that. I'd like to except to that question and to the answer.

"THE COURT. I'll sustain your objection to my question—it is probably an improper one. Gentlemen of the Jury, is there anyone of you who cannot remove this from your mind and consideration during your deliberations? Let the record reflect they can remove it from their mind. This was a confidential informer?

"A. Yes, sir.

"Q. Alright.

"THE COURT. I think that is as far as we need to go at this time."

▮ Recognizing that the question of the confidential informer was not in issue at that time, the Court quickly admonished the jury concerning this testimony. The instructions were directed solely to the jury's consideration of the Court's question, "This was a confidential informer?," and as reflected in the record, the jury indicated they could remove from their consideration this particular inquiry. We are of the opinion that the Court's admonition sufficiently corrected any adverse effect which may have resulted from this improper question.

▮ Following his re-cross examination of Sheriff Mitchell, appellant requested the court to allow him to reserve further cross-examination of this witness.

Appellant argues that the court's refusal was prejudicial to his rights. No error resulted from this ruling. A trial court has the discretion to allow or disallow a witness to be recalled for further cross-examination. Koger v. State, 38 Ala.App. 476, 87 So.2d 552.

II

Appellant contends that the introduction of a photograph of the appellant taken at the jail was error. In support of this contention, he relies on two cases—Bates v. State, 40 Ala.App. 549, 117 So.2d 258, and Chamberlain v. State, 46 Ala.App. 642, 247 So.2d 683. Our reading of these cases indicates they can be distinguished from the present one without difficulty. In *Bates*, supra, the photograph of appellant showed him handcuffed and standing on a still, and in *Chamberlain*, supra, the photograph introduced showed appellant in a lineup where the identity of the accused was not in issue.

The question of admissibility of photographs was considered in Wilson v. State, 31 Ala.App. 21, 11 So.2d 563, and although the case involved photographs of the deceased in a murder trial, the language employed by the court is significant in that it speaks of a photograph's probative value:

"If the photographs had a reasonable tendency to prove or disprove some material fact in issue, or shed some light upon some material inquiry, they were admissible even though they also might have tended to inflame the minds of the jury."

It is apparent from the following testimony that appellant's identity was in issue in the instant case:

"Q. (Prosecutor) I'll just ask you to describe his appearance as of December 22—the day that he was arrested?

"MR. LOVE. Please the Court, we object again as being immaterial. His identity has been admitted—

"Q. Not unless, Judge, he wants to go ahead and stipulate his identity all the way through the thing. We're having to tie this identity up on the 22nd back to the 24th of November, the date of the alleged sale.

"THE COURT. There will be a question will there not, Mr. Love, of whether this was the individual that sold—

"MR. LOVE. Yes, sir—

"THE COURT. So, there would be a question of identity unless you want to stipulate it.

"MR. LOVE. No, sir. He did not sell any to these people.

"THE COURT. I'm going to overrule the objection.

"MR. LOVE. And we except."

■ The picture was taken on the day of the arrest, approximately one month following the purchase. It was obvious to the court that appellant's appearance at trial and in the photograph were quite different. The photograph had a tendency to prove the material fact of identity. It was not a typical mug shot—it did not show a number nor the fact that it was taken in jail.

■ Appellant also complains that the photograph violated his constitutional rights. The U.S. Supreme Court in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, held that taking a blood sample, handwriting exemplar, or photograph of the defendant when booked does not violate the privilege against self-incrimination. The defendant is not being asked to give "testimonial or communicative" evidence.

### III

Finally, it is asserted that the trial court erred in admitting evidence of an alleged oral confession made by appellant at the time of his arrest, and in the absence of Miranda warnings.

The inculpatory statement was made in Sheriff Mitchell's presence, and during his direct examination the sheriff gave this account:

"Q. And did you or—who placed the young man under arrest?

"A. I did.

"Q. And immediately upon being placed under arrest did either you or Mr. Patterson or the grandfather or the young man say anything at that time and place?

"A. Yes, sir. Shiflett said that he hadn't sold any, and Mr. Patterson said, 'I'm the one that bought from you.' At that time he said, 'Well, I haven't sold but two lids. One to you and one to another dude. That's the only marijuana I've sold in a long time.'

"Q. If I understood you correctly—I attempted to write it down—he said first that he hadn't sold any? That or that in substance?

"A. That's right.

"Q. And then you say Sgt. Patterson spoke up and said I'm the one that bought from you?

"A. Yes, sir.

"Q. And then he said I've only sold two —one to you and one to another dude? That or that in substance?

"A. Yes, sir."

■ It is an accepted principle that one may waive and does waive his constitutional rights if he fails to assert them at the appropriate time.

The U.S. Supreme Court in Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834, stated:

"No procedural principle is more familiar to this Court than that a constitution-

al right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."

 The remarks of appellant Shiflett were unsolicited and spontaneous, and when introduced at trial, were not objected to by appellant.

We have searched the record and finding no error, we affirm.

Affirmed.

TYSON and HARRIS, JJ., concur.

CATES, P. J., and ALMON, J., concur in result.