Appellant was convicted of murder in the first degree of Robert Howard Chunn. The evidence is undisputed that she shot him three times with a pistol, one bullet penetrating his chest and killing him. The evidence presented by the State, largely circumstantial, pointed almost conclusively to that conclusion; in taking the stand in her own defense, defendant admitted she killed him as indicated, but she stoutly claimed that she did so in self-defense. That there was strong evidence of some of the elements of self-defense, we have no doubt, but we are convinced that there was substantial evidence that not all of the essential elements of self-defense existed and that whether she was guilty of murder in the first degree was an issue for the determination of the jury. No contention is made by appellant to the contrary.
Although there was little conflict in most of the important portions of the evidence, the testimony undulated as to the exact legal status between defendant and the victim. They were referred to, and considered by some, as married, that is, they were common law husband and wife. They had been living together about eight years, during which time two children were born to them; she was the mother of three other children, who also were living with them at the time of the homicide. Both had been drinking the afternoon the killing occurred. There was evidence that she had threatened that afternoon, as well as on previous occasions, to kill him. She had been drinking, and there was evidence to indicate that he had been drinking. Immediately after the killing, she told one of her children to call the police and an ambulance. When the first police arrived a little after 4:00, defendant was sitting on the floor of the living room of their home with the victim's head in her lap. After the arrival of officers and the coroner, defendant was taken to the police station. There was considerable evidence that she was intoxicated at the time she was questioned and given theMiranda warning and informed in minute detail of her rights. Thereafter, she signed a written statement, in her own handwriting that she had composed, in which she admitted the killing under circumstances substantially in accordance with her testimony on the trial.
Appellant contends that her confession should not have been admitted in evidence, due to the state of her intoxication and that "Without the admission of the statements of the Defendant, the State may not have been able to make out a prima facie case, thereby rendering the Defendant's testimony unnecessary." We think the evidence at the time the State closed its testimony was sufficient to make out a prima facie case against defendant, but even so, the extent of her intoxication at the time of her confession affects the question of the admissibility thereof, and if the confession was erroneously admitted, it could be a sufficient basis for a reversal.
Although there can be little doubt that appellant was intoxicated to some extent, we cannot say that she was intoxicated to such an extent that she did not fully understand what she was doing and saying. The accuracy of the statements she made in her confession, as shown by other undisputed evidence in the case, and the composure she manifested in her explanation of what occurred, and her putting an account thereof in her own deliberate handwriting, negate any mania that would make her confession inadmissible. We continue to adhere to what was held in Anderson v. State, 45 Ala. App. 653,235 So.2d 902, 905, as follows:
 "The rule is well established in this jurisdiction that intoxication short of mania or such an impairment of the will and *Page 1102 
mind as to make the person confessing unconscious of the meaning of his words will not render a confession inadmissible. Warren v. State, 44 Ala. App. 221, 205 So.2d 916, cert. denied 281 Ala. 725, 205 So.2d 920; Ray v. State, 39 Ala. App. 257, 97 So.2d 594; Smith v. State, 25 Ala. App. 297, 145 So. 504; Eskridge v. State, 25 Ala. 30."
To the same effect are Edwards v. State, 56 Ala. App. 405,321 So.2d 744; Patterson v. State, 56 Ala. App. 359, 321 So.2d 698;Woods v. State, 54 Ala. App. 591, 310 So.2d 891.
Two photographs, a profile and a front view, of defendant taken at the jail the night of the homicide were introduced in evidence over the objection of defendant. There is no material difference between the parties on appeal as to the applicable principles of the law of evidence. A photograph is admissible if it tends to prove or disprove some disputed or material issue, if it tends to shed light on, to strengthen, or to illustrate other testimony in the case. Knight v. State,273 Ala. 480, 142 So.2d 899; Fletcher v. State, 291 Ala. 67,277 So.2d 882; Smith v. State, 56 Ala. App. 609, 324 So.2d 323;Johnson v. State, 56 Ala. App. 583, 324 So.2d 298, cert. denied, Ala., 324 So.2d 305.
As indicated above, the defendant on the trial presented an issue whether defendant was so intoxicated at the time of her inculpatory statements at the jail that her admissions should not have been admitted in evidence. There was considerable testimony taken on that subject. The two photographs were contained in one print and referred to during the trial as a "photograph," and not "photographs," and offered as a single exhibit. During the testimony of Detective Petty, who testified as to his interview with her in which she had made the incriminating statements referred to hereinabove, the following occurred:
 "Q Detective Petty, does that photograph substantially and accurately depict this defendant as she appeared to you on that date?
"A Yes, sir.
 "MR. MORGAN: Your Honor, the State would offer Exhibit 18 into evidence.
 "MR. MORRIS: We object unless they cut out that portion that has mug shot on it.
"THE COURT: Overrule.
"MR. MORRIS: Has no probative value.
 "THE COURT: Overrule. Ladies and gentlemen, in this case State's Exhibit 18, I am allowing that to be admitted into evidence in the case and submitted for your consideration only on the point of the condition of the defendant at the time of making the alleged statement and not for showing her condition at any time at the scene of the alleged incident or any time intervening but at the time of the making of the alleged statement that has been introduced and should be taken and considered by you for that purpose only.
 "MR. SMITH: We object to the comment and instruction of the Court on the basis that this picture was taken at seven o'clock at night and it is a photograph, has no probative value and has no relevant value to the issues in this case.
"THE COURT: Overrule.
 "MR. MORRIS: We further object to the Judge's comment on the evidence in this case in that it was not offered for the purpose for which the Judge is allowing it to be introduced into evidence.
"THE COURT: Overrule."
Appellant strenuously urges that there was no testimony as to the time the photographs were taken, saying, "For all we know, the photographs were made shortly before midnight on August 31, 1975, while her statement was given almost five hours earlier." We are impressed with the fact that the testimony does not positively and without absolute certainty show when the pictures were taken, but we do not agree that it could be reasonably inferred from the evidence that they were not taken until midnight. The clear inference from the evidence is that they were taken at approximately the same time that she was interrogated. It is to be noted that in objecting to the photographs, counsel for defendant *Page 1103 
stated: "That this picture was taken at seven o'clock at night," which the evidence shows was the time when defendant was questioned and made her incriminating statements.
In insisting that the photographs did not shed any light on any material inquiry in the case, appellant argues and quotes from III Wigmore, Evidence, § 792 (3rd Ed. 1940), that a photograph of a person's outward appearance "is not evidential of his inward condition." In the context of the quoted statement, Dean Wigmore is evaluating objections made to photographs, as shown by the following:
 "Certain discriminations which may affect admissibility from other points of view need to be made:
 "(1) There may be an objection, not to the photographic testimony as such, but to the relevancy of the fact testified to; if the fact to be evidenced by the photograph is itself not admissible, obviously it cannot be proved by photograph or otherwise. This objection of irrelevancy is commonly either that the condition of a place or person at the time of taking the photograph is not evidence of the condition at the time in issue (§ 438 supra); or that the outward appearance of a person is not evidential of his inward condition §§ 226, 228, 229 supra); or that the features of a child are not evidence, by resemblance, of a particular person's paternity (§ 166 supra). These objections are seldom favorably considered by the courts; but it is obvious that the decision in any case rests on principles of relevancy of the fact pictured, and does not affect the propriety of evidencing a relevant fact by a photograph." III Wigmore, Evidence, § 792 (Chadbourn Rev. 1970)
Dean Wigmore is not saying that the outward appearance of a person is never evidential of his inward condition. He is in effect saying that when one's outward appearance is not evidential of his inward condition, then neither testimony as to his outward appearance nor a photograph showing his outward appearance is admissible as evidence of his inward condition. That one can appear to some to be sober while he is actually intoxicated or that he can appear to some to be intoxicated when he is actually sober is hardly less questionable than the universally recognized principle that generally one's appearance indicates whether he is intoxicated. His appearance can be shown either by the testimony of witnesses or photographs.
The "mug shot" feature of defendant's objection to the photographs as first made does not seem to be pressed on appeal. The reference is to the fact that the photographs show that they were taken at the police department. The date thereof is shown on the photographs. No possible implication could have arisen to the effect that defendant had any previous jail record or that her pictures had ever been previously taken by law enforcement officers.
To avoid any possible improper misapplication by the jury of the photographs, the court limited the jury to a consideration of them for the purpose solely of showing her condition at the time of her making incriminating statements. Appellant now complains that such limitation of the evidence by the court constituted reversible error, in that it invaded the province of the jury. We do not so construe the statement of the trial court. It is to be noted that the witness had said that the photographs depicted defendant as she appeared to him on that date. He did not say that it depicted her as she appeared at the time of her making the incriminating statements, but the part of the record quoted hereinabove discloses that all concerned understood that the reference was to the time that Detective Petty was interviewing her and taking her statement as to what had occurred. The photographs were properly admitted in evidence, and the comment of the court was not erroneous.
We find no error in the record prejudicial to defendant, and the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. *Page 1104 
CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur except CATES, P.J., concurs in the result only.