600 So.2d 982 (1992)
Ex parte Randall Blake LONG.
(Re Randall Blake Long
v.
State).
1901368.
Supreme Court of Alabama.
April 24, 1992.
*983 Leo E. Costello of Costello, Stott & Grayson, Birmingham, for petitioner.
James H. Evans, Atty. Gen., and Andy S. Poole, Asst. Atty. Gen., for respondent.
ALMON, Justice.
We granted Randall Blake Long's petition for a writ of certiorari to determine whether the Court of Criminal Appeals' judgment, affirming Long's conviction despite the trial court's denial of Long's request to instruct the jury on homicide by vehicle, conflicts with our opinion in Ex parte Jordan, 486 So.2d 485 (Ala.1986). The petition also presents the question of whether the affirmance by the Court of Criminal Appeals conflicts with prior decisions by that court in failing to hold that the admission into evidence of a "mug shot" of Long constituted reversible error.
The grand jury indicted Long for "intentionally caus[ing] the death of another person Arthur Simmons by running over him with an automobile, in violation of Section 13A-6-2," Ala.Code 1975. After the evidence was presented at trial, Long requested a charge on homicide by vehicle under § 32-5A-192, Ala.Code 1975, arguing that it was a lesser included offense of murder. The trial judge denied that request and charged the jury on intentional murder, manslaughter, and criminally negligent homicide. The jury found Long guilty of manslaughter, and he was sentenced to 18 years in the State penitentiary.[1]
*984 The facts, briefly stated, are as follows: On July 20, 1989, Long drove to a Birmingham residential area in an attempt to buy cocaine. He picked up a man named Reginald and they drove around in Long's car, but were unable to find any cocaine. Another man, Simmons, approached the car and told Long that he could get him some cocaine. Long handed Simmons a $100 bill and Simmons started to walk away. Reginald told Long that he had made a mistake by giving Simmons the money, so Long called out to Simmons that he wanted his money back. Simmons ran around the corner of an apartment building. Long drove his car over the curb and up onto the grass, chasing after Simmons. The car struck Simmons and killed him. Testimony by Long, the coroner, and another witness indicated that Simmons fell on the ground before Long's car ran over him.
For his argument that vehicular homicide should have been submitted to the jury as a lesser included offense, Long relies on this Court's decision in Ex parte Jordan, 486 So.2d 485 (Ala.1986). Jordan was indicted for murder under § 13A-6-2, Ala.Code 1975. The indictment read, in pertinent part, as follows:
"1st: Larry Joe Jordan ... did recklessly engage in conduct which manifested extreme indifference to human life and created a grave risk of death to a person other than the said Larry Joe Jordan, and did thereby cause the death of John Howard [Odum] by operating a motor vehicle under the influence of alcohol and did thereby cause the death of John Howard [Odum] by striking the vehicle which John Howard [Odum] was operating, in violation of Section 13A-6-2 of the Alabama Criminal Code.
"2nd: Larry Joe Jordan ... did intentionally cause the death of ... John Howard [Odum], by operating a motor vehicle under the influence of alcohol and did thereby cause the death of John Howard [Odum] by striking the vehicle which John Howard [Odum] was operating, in violation of Section 13A-6-2 of the Alabama Criminal Code."
Jordan, 486 So.2d at 486 (footnote omitted).
Jordan requested that the jury be instructed that homicide by vehicle was a lesser included offense of murder. The trial judge refused to give the instruction and, instead, instructed the jury on murder, manslaughter, and criminally negligent homicide. Jordan was convicted of murder and was sentenced to 40 years in the penitentiary.
This Court granted Jordan's petition for certiorari review and initially reversed the *985 Court of Criminal Appeals' affirmance, holding that under the facts in Jordan vehicular homicide was a lesser included offense of murder; however, on rehearing, this Court held that the failure to instruct the jury on vehicular homicide was harmless error because the jury had already rejected the lesser included offenses of manslaughter and criminally negligent homicide. This Court reasoned that although the instruction would have been proper, the failure to give it did not prejudice Jordan and did not affect the outcome of the case. Jordan, 486 So.2d at 489.
In deciding Jordan, this Court rejected the decision by the Court of Criminal Appeals, which "[stood] for the proposition that a set of facts establishing the commission of murder can never also establish the commission of vehicular homicide [and] create[d] a broad rule which fails to take into account the facts of each case." Id., at 488 (emphasis in original). This Court went on to say that considering the relationship of the murder and vehicular homicide statutes "only in abstract terms ... completely ignores the facts of this case and the indictment under which Jordan was charged. We find this application of § 13A-1-9 to these statutes and facts erroneous." Id.
This Court in Jordan held that "[u]nder the proper application of subsection (1) of [§ 13A-1-9(a)] to the murder statute and the vehicular homicide statute, the issue [was] simple: Can all or fewer than all of these facts establishing the commission of murder also establish the commission of vehicular homicide?" Id. In Jordan, looking at the language of the indictment and the jury's conviction under the indictment, this Court found that some of the same facts that established murder could also have established homicide by vehicle. The jury found that Jordan "recklessly engage[d] in conduct which manifested extreme indifference to human life and created a grave risk of death ... and did thereby cause the death of John Howard [Odum] by operating a motor vehicle under the influence of alcohol" and striking the car Odum was driving. 486 So.2d at 488. Vehicular homicide could also be established by some of these facts, because Jordan violated motor vehicle laws by driving under the influence of alcohol and because his driving was the proximate cause of Odum's death.
This Court also noted that if subsection (4) of § 13A-1-9(a) was applied the issue would be "whether the two criminal statutes differ under these facts only in that vehicular homicide contemplates a less serious injury or risk of injury or requires a lesser kind of culpability." Id. (Emphasis in original.) A lesser culpability is required for vehicular homicide than for murder, and reckless conduct that creates a "`grave risk of death' and `manifest[s] extreme indifference to human life' does encompass conduct in violation of motor vehicle laws which unintentionally but proximately causes another's death." Id. This Court held that, under either subsection (1) or subsection (4) of § 13A-1-9(a), Ala.Code 1975, Jordan was entitled to have the jury charged that vehicular homicide was a lesser included offense of murder.[2]
We find this case indistinguishable from Jordan on the question of whether the jury should have been instructed that homicide by vehicle was a lesser included offense of murder. The jury rejected the intentional murder charge and found that Long committed manslaughter, i.e., that he "recklessly cause[d] the death of another person." For purposes of the Criminal Code, "recklessly" is defined at § 13A-2-2(3), in pertinent part as follows:
"A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."
*986 If the jury had been instructed on homicide by vehicle, it might have found that Long "unlawfully and unintentionally" caused Simmons's death by operating his vehicle in violation of any of the following statutes:
"§ 32-5A-190. Reckless driving.
"(a) Any person who drives any vehicle carelessly and heedlessly in willful or wanton disregard for the rights or safety of persons or property, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving."
"§ 32-5A-213. Drivers to exercise care.
"Notwithstanding other provisions of this chapter or the provisions of any local ordinance, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian...."
"§ 32-5A-52. Driving upon sidewalk.
"No person shall drive any vehicle upon a sidewalk or sidewalk area except upon a permanent or duly authorized temporary driveway."
We hold that Long, like the defendant in Jordan, was entitled to a charge on the lesser included offense of homicide by vehicle under either subsection (1) or subsection (4) of § 13A-1-9(a), Ala.Code 1975. The proof required for any of the four degrees of homicide at issue was simply that Long unlawfully ran over Simmons with his automobile and thereby caused Simmons's death. Thus, "the same or fewer than all of the facts" required to establish the commission of murder were required to establish manslaughter, vehicular homicide, or criminally negligent homicide, and so § 13A-1-9(a)(1) allows a conviction for any of the three lesser degrees of homicide. Indeed, the only question for the jury was the degree of culpability with which Long acted, so § 13A-1-9(a)(4) also establishes that the three lesser degrees of homicide are included offenses. Did Long intentionally kill Simmons?[3] If not, did he act with criminal recklessness so as to make the killing manslaughter? If not, was he reckless within the meaning of the reckless driving statute or was his use of his automobile otherwise unlawful in a way that would support a conviction of vehicular homicide? If not, was he criminally negligent? The first, second, and fourth of these questions express the essence of the case that was submitted to the jury. The third question is an aspect of the case that should have been submitted to the jury.
Because the charge of homicide by vehicle correctly states the law of the case against Long and because there was evidence to support that charge, Long was entitled to have it given.
"An individual accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973). A court may properly refuse to charge on lesser included offenses only (1) when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) when the requested charge would have a tendency to mislead or confuse the jury. Lami v. State, 43 Ala.App. 108, 180 So.2d 279 (1965). In fact, our decisions are to the effect that every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility. Burns v. State, 229 Ala. 68, 155 So. 561 (1934)."
Chavers v. State, 361 So.2d 1106, 1107 (Ala.1978); Ex parte Hannah, 527 So.2d *987 675, 676 (Ala.1988); Ex parte Oliver, 518 So.2d 705 (Ala.1987).
In Jordan, 486 So.2d at 489, the Court said that, "on a continuum of culpability," manslaughter and criminally negligent homicide "stand between murder and vehicular homicide." For purposes of the Court's "harmless error" holding, it was not necessary to decide whether vehicular homicide or criminally negligent homicide was the least culpable offense; it was sufficient that manslaughter is a more culpable offense than vehicular homicide and that the jury returned a verdict of guilty on the most culpable offense, murder. Upon further consideration, we find that, if vehicular homicide is a lesser included offense of murder, as it is in this case and was in Jordan, it will ordinarily be a more culpable offense than criminally negligent homicide. It is punished more severely. Vehicular homicide is punishable by a fine of not less than $500 nor more than $2,000 and imprisonment for not less than one year nor more than five years. See § 32-5A-192(b). Criminally negligent homicide is a Class A misdemeanor, which is punishable by imprisonment for not more than one year, § 13A-5-7(a)(1), and a fine of not more than $2,000, § 13A-5-12(a)(1). Furthermore, the range of statutes and ordinances that might support a conviction of vehicular homicide includes offenses that are more culpable than criminal negligence, such as § 32-5A-191, driving under the influence of alcohol, as in Jordan, or § 32-5A-190, reckless driving, as the jury could have found here.[4]
Because vehicular homicide is the next lesser included offense under manslaughter, at least under the circumstances presented here, the failure to instruct on vehicular homicide cannot be harmless error, as it was in Jordan. Nothing in the jury's verdict supports the contention that it could not have returned a verdict on that offense instead of manslaughter if it had been given the opportunity, or that any finding implicit in the jury's verdict necessarily precludes a verdict on homicide by vehicle. By returning a verdict on manslaughter, the jury has found that Long acted recklessly, but that finding could also support a verdict of vehicular homicide.[5] Therefore, the affirmance by the Court of Criminal Appeals is inconsistent with Jordan,[6] at least as we reinterpret the relative degrees of culpability of vehicular homicide and criminally negligent homicide, and that court's judgment is due to be reversed.
Long also contends that the trial court erred to reversal in admitting into evidence a "mug shot" taken at the time of his arrest for the alleged murder, on the *988 grounds that it was highly prejudicial and irrelevant. During the State's cross-examination of Long, the following occurred:
"Q. You didn't look quite the same on July 20, 1989, as you do now, did you?
"A. No, sir.
"MR. COSTELLO: I object to that.
"THE COURT: State your grounds for the record.
"MR. COSTELLO: It's immaterial, irrelevant, and incompetent.
"THE COURT: Overruled.
"(Photograph marked State's Exhibit 40 for identification. Exhibit handed to Mr. Costello.)
"MR. COSTELLO: I have an objection to the exhibit if it is offered.
"(Exhibit handed to the Court. Jury out.)
"THE COURT: Mr. Brown, what is this for?
"MR. BROWN: Judge, I think it has tremendous probative value in demonstrating the reason for the inability of the witnesses, Warren Terrell and Billy Cheatem, to identify this defendant, because his appearance has been changed considerably since that time. The photograph was taken on July 20, 1989. It is admittedly a booking photograph, but it in no way implies any prior misconduct on the part of this defendant because it was taken in connection with this case on the date of this incident. His hair, as you can see, is at least six inches longer than it is now.
"THE COURT: I thought Warren, the second kid, it was my understanding that he never saw the man enough to identify him period. That was my digest of the testimony. He was saying he didn't see him good enough. He didn't even try to look outhe did stand up and look around the courtroom.
"MR. BROWN: And he was unable to identify him.
"THE COURT: But, at one time he did say just a white man. And I believe Cheatem basically was the same. He would know where the defendant was. I don't think it would have any bearing on Cheatem.
"MR. BROWN: I would also say it is admissible for edification of the jury to make a determination of who the real Randall Blake Long is. They are entitled to know how he appeared on July 20, 1989, as much as how Arthur Simmons appeared on that day.
"THE COURT: Let me hear from you.
"MR. COSTELLO: I take it that the argument from the State is because the man has a haircut, which is the only differencehe wanted to get a haircut and get cleaned up for trial, but that would not make that picture admissible, and I don't know of any precedent for that type of thing. The second thing is it has a number on it and it makes him look like a criminal. It's got murder written all over the back of it and it doesn't tend to prove anything that would help the State in their case.
"THE COURT: He's saying it was taken the same day this crime allegedly took place, and that it would showI guess he's saying it would offer the jury some evidence of how he appeared and his ability and state of mind and his general demeanor.
"MR. COSTELLO: Yes, sir. I think that's exactly what they are trying to prove and I don't see how a picture can show his state of mind. It can show that he didn't have a haircut on that day.
"THE COURT: Wait just a minute. You don't take the benefit without the burden. You asked the defendant, I mean you asked if Simmons had cocaine in his system. You asked Dr. Brissie that. I believe you asked several things about the decedent in this case. Tell me what you were proving about whether there was cocaine in him.
"MR. COSTELLO: To show that the decedent was not functioning as a person would have been functioning. He could have very easily thought he could outrun the car. He could very easily have slipped.
"THE COURT: So that's in on that basis. Wouldn't this picture tend to show or allow the jury a reasonable posture from which to see how he was functioning *989 on that date? I don't know anything that would be better.
"MR. COSTELLO: I don't see how the jury can conclude from a photograph
"THE COURT: If the picture doesn't speak better than words about the cocaine, then I've been misled during my tenure here on this earth. These people know he said he's been to the city jail. He said that the last few minutes. The question was where did Officer Whisenhant take you and he said, no, he didn't take him to jail, he took him to city hall. City hall is not jail. Then he referred to the fact that he got his car soon after he got out of jail. All of thatyou know, you've got to play by the same rules. I think it would be as much relevance as whether or not the decedent had cocaine in him when he was over at the forensic science place. This jury knows he's in here for murder. But I tell you what, we will excuse all that. I think the jury has a right to see how he looked on July 20, 1989, within hours after it took place. If something did take place. When you open doors, you can't close them on the other fellow.
"(State's Exhibit 40 received into evidence. Jury present.)
"Q. (By Mr. Brown) Take a look at State's Exhibit 40, Mr. Long, and that's the way you looked on July 20, 1989
"MR. COSTELLO: May I have an exception?
"THE COURT: Sure.
"A. Yes, sir. After that fight."
Mug shots are generally inadmissible in a criminal trial because the jury may infer from them that the defendant has a criminal history. Gross v. State, 395 So.2d 485 (Ala.Crim.App.1981). However, under certain circumstances, admitting a mug shot into evidence does not constitute reversible error.
We find no cases from this Court directly on the point of the admissibility of mug shots, but the Court of Criminal Appeals has, in numerous cases, relied on the three prerequisites established in United States v. Harrington, 490 F.2d 487 (2d Cir.1973), for a ruling that the introduction of a "mug shot" photograph does not result in reversible error. See, e.g., Williams v. State, 546 So.2d 705 (Ala.Crim. App.1989); Jones v. State, 451 So.2d 389 (Ala.Crim.App.1984); Gross v. State, supra; Williamson v. State, 384 So.2d 1224 (Ala.Crim.App.1980); Holsclaw v. State, 364 So.2d 378 (Ala.Crim.App.1978); but see Brown v. State, 229 Ala. 58, 155 So. 358 (1934) (fact that defendant was in jail when photograph was taken did not present reversible error as to admission of the photograph). The three requirements set out in Harrington are:
"1. The Government must have a demonstrable need to introduce the photographs; and
"2. The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and
"3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs."
Harrington, 490 F.2d at 494. We conclude that these three inquiries are appropriate criteria to consider when determining the admissibility of a mug shot; however, the failure to meet one or more of these criteria would not necessarily result in reversible error. We shall still apply Rule 45, Ala.R.App.P., when deciding whether to reverse or set aside a judgment for error.
In applying this analysis, we find that there was no demonstrable need for the State to introduce into evidence Long's mug shot. In Van Nostrand v. State, 51 Ala.App. 494, 286 So.2d 903 (Ala.Crim. App.), cert. denied, 291 Ala. 799, 286 So.2d 906 (1973), a case similar to the present case, Van Nostrand was convicted of possessing and selling heroin. At trial, over the objection of counsel, a photograph taken at the time of Van Nostrand's arrest was admitted into evidence. The photograph showed Van Nostrand with extremely long hair, whereas at trial his hair was short. The Court of Criminal Appeals held that because there was no question regarding Van Nostrand's identity, "there could be no probative value whatsoever in the *990 introduction of the photograph." Van Nostrand, 51 Ala.App. at 496, 286 So.2d at 905. The court went on to say that the photograph had no effect other than to "prejudice the minds of the jury against [Van Nostrand]" and, therefore, allowing the photograph into evidence constituted reversible error.
In another case similar to the present case, Boyd v. State, 50 Ala.App. 394, 279 So.2d 565 (Ala.Crim.App.1973), Boyd was convicted of first degree murder. At trial, a photograph of Boyd taken shortly after the shooting was admitted into evidence. The photograph showed Boyd with a goatee and a mustache, features he did not have at trial. The Court of Criminal Appeals held that Boyd's identity was unquestioned and that the issue was, instead, whether he fired the shot and why; therefore, the court held, the photograph was not relevant to any issue in the case. Boyd, 50 Ala.App. at 397, 279 So.2d at 568. See also Motes v. State, 356 So.2d 712 (Ala.Crim.App.), cert. denied, 356 So.2d 720 (Ala.1978) (admission of appellant's photograph made at the time of arrest was proper because his identity was in issue); Shiflett v. State, 52 Ala.App. 476, 294 So.2d 444 (Ala.Crim.App.1973), cert. denied, 292 Ala. 749, 294 So.2d 448, cert. denied, 419 U.S. 867, 95 S.Ct. 124, 42 L.Ed.2d 105 (1974) (although not a mug shot, photograph taken on the day of defendant's arrest showing change of appearance at trial had probative value on the issue of identity when defendant denied selling the drugs). The court in Boyd noted, however, that "an error that might have been prejudicial in a close case does not require reversal when the evidence of appellant's guilt is strong." Boyd, 50 Ala.App. at 397, 279 So.2d at 568. The court held that because of the State's strong case against Boyd the error did not require reversal.
The record clearly indicates that Long admitted to driving the car that ran over and killed Simmons. Long's identity was not an issue. The issue was whether he intentionally or accidentally ran over Simmons and, if accidentally, what the degree of his culpability was. The State argued that the photograph was probative because it explained why two of the witnesses could not identify Long; however, as the record indicates, the two witnesses were unable to identify Long, not because his appearance had changed, but because they never saw him well enough to make an identification. Also, the State offered no testimony from any of the witnesses concerning the photograph and whether they could now identify Long as the driver of the car.
In Williams v. State, 546 So.2d 705 (Ala. Crim.App.1989), a case relied on by the State, the court admitted into evidence a mug shot of Williams that showed the discrepancy between his appearance at trial and his appearance at the time of the offense; however, the photograph was relevant because it was supported by testimony from witnesses. The State's witnesses testified that Williams had grown a beard and had more gray in his hair. In the present case, the witnesses were never asked if they could identify Long from the photograph and, furthermore, Long had already admitted to driving the car that ran over Simmons. Because the death occurred during an attempt by Long to purchase cocaine and because he had a history of drug problems, it appears that the State's only reason for offering the mug shot into evidence was to depict Long as a "long-haired" drug addict and thereby to prejudice the jury. As the record indicates, the State argued that the jury should be able to "make a determination of who the real Randall Blake Long [was]."
With regard to the second prerequisite in Harrington, supra, Long contends that the mug shot caused the jury to infer that he had a prior criminal record. The mug shot introduced by the State was composed of juxtaposed frontal and profile views of Long. He has no shirt on in the photograph and displayed on his chest is "City Jail, Birmingham, Alabama," a police identification number, and the date. The court placed tape over the markings on the back of the photograph.
In Holsclaw v. State, 364 So.2d 378 (Ala. Crim.App.), cert. denied, 364 So.2d 382 (Ala.1978) a mug shot of Holsclaw that was similar to Long's mug shot was admitted *991 into evidence over Holsclaw's objection. Holsclaw's photograph was also composed of juxtaposed frontal and profile views and there was a placard around his neck bearing the same information that appeared on Long's photograph. The court in Holsclaw followed the Harrington analysis and held that the mug shot portrayed Holsclaw in such a manner that the jury could have reasonably inferred that he had a prior criminal record. Holsclaw, 364 So.2d at 381. Also, Holsclaw's identity was not an issue and the State did not, therefore, have a demonstrable need to introduce the photograph. Id.
The court noted in Harrington, with regard to the juxtaposed frontal and profile-view mug shots, that the "`double-shot' picture produces a `natural, perhaps automatic' inference of prior encounters with the police and that crude and inartful masking of these pictures heightens, rather than diminishes, their significance to the jury." Harrington, 490 F.2d at 495. The photographs in Harrington had been masked, but in an extremely incompetent manner; however, although tape had been placed over the markings on the back of Long's mug shot, no attempt had been made to cover the incriminating inscriptions on the front. We conclude that the photograph of Long could have reasonably given the jury the impression that Long had a prior criminal record.
The present case is further distinguishable from several cases decided by the Alabama Court of Criminal Appeals regarding mug shots. In Williams v. State, 546 So.2d 705 (Ala.Crim.App.1989), the court held that a mug shot of Williams was properly admitted into evidence because the State prefaced its admission by asking Williams's sister if Williams's appearance in the photograph was the same as his appearance at the time of the crime for which he was arrested. The court reasoned that this question implied that the mug shot was taken near the time of the offense and that the jury was well aware of the fact that Williams had been arrested for that offense. It is not clear from the opinion of the Court of Criminal Appeals what type of mug shot photograph was admitted in Williams. We do not know if it was composed of juxtaposed frontal and profile views or if any police markings appeared on the front or back of the photograph.
We believe that because identity was an issue in Williams, therefore giving the photograph probative value, Williams is distinguishable from the instant case. Although the prosecutor asked Long if the picture was an accurate depiction of the way he looked on the day of the alleged crime, Long's identity was not in issue and the mug shot had no probative value whatever. Long was clearly depicted as a criminal.
Chunn v. State, 339 So.2d 1100 (Ala. Crim.App.1976), is also distinguishable from the present case. In Chunn, two photographs of Chunn, a frontal view and a profile view, were admitted into evidence; Chunn was convicted of murdering her husband. She argued that at the time of her interrogation she was intoxicated and that her confession was erroneously admitted because of her intoxicated state. Chunn's identity was not in issue. The court held that because the date on the photograph was the same as the date of her confession and because the photographs were taken at approximately the same time as her interrogation, there was no possible way for the jury to infer from the photograph that Chunn had a previous jail record. Chunn, 339 So.2d at 1103. The trial court allowed the jury to consider the photographs only for the purpose of showing Chunn's condition at the time she confessed. Id.
In the present case, although the date appeared on Long's mug shot and that date was the same date that the alleged crime occurred, there was no purpose in allowing the photograph into evidence. The record indicates that the reason the photograph was admitted was the court's belief that "the jury has a right to see how [Long] looked" on the day of the alleged offense; however, no evidence was offered that Long was intoxicated or under the influence of drugs when his car ran over Simmons. His condition at the time the picture *992 was taken was irrelevant and was not probative of any issue in the case.
The final prerequisite in Harrington, supra, is that the manner in which the photograph is introduced at trial must not draw particular attention to the source or implications of the photograph. The fact that no mention was made by the State or any witness that the photograph was a mug shot does not satisfy the third requirement in Harrington. It is quite obvious from just a brief glance that the photograph was a mug shot. The jury did not need to be told this for us to conclude that particular attention was drawn to the source or implications of the picture. See Williams v. State, 546 So.2d 705 (Ala.Crim.App.1989).
Although the trial court placed white paper over the markings on the back of the photograph, no covering was placed over the markings on the front. See Jones v. State, 451 So.2d 389, 393 (Ala.Crim.App. 1984) (trial judge prevented any "particular attention to the source or implications of the photographs" by covering markings and numbers, leaving only a photograph of the person). The manner of introduction clearly drew "particular attention to the source or implications" of the photograph.
Because the admission of Long's mug shot into evidence failed to pass all three prerequisites in Harrington, and because its admission into evidence prejudiced Long, its admission constituted reversible error. For this reason, and also because of the failure to instruct the jury on the lesser included offense of homicide by vehicle, we reverse the judgment and remand the cause for a new trial.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, STEAGALL and KENNEDY, JJ., concur.
INGRAM, J., concurs in the result.
INGRAM, Justice (concurring in the result):
I agree with the majority that the trial court committed reversible error in admitting the "mug shot" into evidence. However, I do not agree that the trial court erred when it denied Long's request to instruct the jury on homicide by vehicle.
Under the facts of this case, I would hold that vehicular homicide is not a lesser included offense of murder. In my opinion, the facts establishing the offense charged here, murder, did not also establish vehicular homicide, and, therefore, I conclude that this fact situation is distinguishable from that in Jordan.
"Homicide by vehicle" is defined as follows:
"Whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic shall be guilty of homicide when such violation is the proximate cause of said death."

§ 32-5A-192, Ala.Code 1975. (Emphasis added.)
I would have difficulty holding that, just because a motor vehicle was the instrumentality that caused Simmons's death, the proximate cause of his death was the violation of a traffic ordinance. I am, therefore, satisfied that the trial court's charge to the jury was adequate and that that court did not err in denying the requested instruction.
Therefore, I concur in the result, although I see no error regarding the requested instruction.
NOTES
[1] The pertinent provisions of the Alabama Code regarding homicide are as follows:

"§ 13A-6-2. Murder.
"(a) A person commits the crime of murder if:
"(1) With intent to cause the death of another person, he causes the death of that person or of another person; or
"(2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person.
". . . .
"(c) Murder is a Class A felony."
"§ 13A-6-3. Manslaughter.
"(a) A person commits the crime of manslaughter if:
"(1) He recklessly causes the death of another person, or
"(2) He causes the death of another person under circumstances that would constitute murder under section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself.
"(b) Manslaughter is a Class C felony."
"§ 13A-6-4. Criminally negligent homicide.
"(a) A person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence.
"(b) The jury may consider statutes and ordinances regulating the actor's conduct in determining whether he is culpably negligent under subsection (a) of this section.
"(c) Criminally negligent homicide is a Class A misdemeanor."
"§ 13A-2-2 Definitions of culpable mental state.
"The following definitions apply to this Criminal Code:
". . . .
"(4) Criminal negligence. A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation. A court or jury may consider statutes or ordinances regulating the defendant's conduct as bearing upon the question of criminal negligence."
"§ 32-5A-192. Homicide by vehicle.
"(a) Whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic shall be guilty of homicide when such violation is the proximate cause of said death.
"(b) Any person convicted of homicide by vehicle shall be fined not less than $500.00 nor more than $2,000.00, or shall be imprisoned for a term not less than one year nor more than five years, or may be so fined and so imprisoned."
Section 13A-1-9 provides the requirements for lesser included offenses:
"(a) A defendant may be convicted of an offense included in an offense charged. An offense is an included one if:
"(1) It is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged; or
"(2) It consists of an attempt or solication to commit the offense charged or to commit a lesser included offense; or
"(3) It is specifically designated by statute as a lesser degree of the offense charged; or
"(4) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interests, or a lesser kind of culpability suffices to establish its commission.
"(b) The Court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."
[2] Of course, the Court held on rehearing that the trial court's error in not giving such a jury charge was harmless under the circumstances of Jordan's conviction for murder.
[3] The State did not indict Long under, or request a charge pursuant to, § 13A-6-2(a)(2), reckless murder.
[4] Even if a defendant were to violate a statute or ordinance that involved mere negligence, criminally negligent homicide would presumably be a lesser included offense of vehicular homicide because the punishment for the latter is more severe except in the single overlap of a one-year sentence of imprisonment. The potential for longer imprisonment should make vehicular homicide a greater offense in spite of that overlap. For a holding that § 32-5A-192(b) is constitutional even though it includes both misdemeanor and felony punishments, see Newberry v. State, 493 So.2d 995 (Ala.1986).
[5] One means by which the trial court could differentiate manslaughter and vehicular homicide in circumstances such as these would be to read the definition of "criminal recklessness" from § 13A-2-2(3) and the definition of "reckless driving" from § 32-5A-190. Another means would be to instruct the jury on the law or ordinance violated by the operation of the vehicle and to instruct the jury that, if it found such a violation, to determine whether the culpability of that conduct was worse than criminal negligence but not so extreme as the degree of recklessness necessary for a manslaughter conviction. These may be fine lines for a jury to draw, but the operation of the statutes in question gives the defendant the right to have such instructions, as stated in Chavers, 361 So.2d at 1107.
[6] We note that the Court of Criminal Appeals has twice criticized Jordan, suggesting that it be reconsidered in light of Schmuck v. United States, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). See Scott v. State, 570 So.2d 813 (Ala.Crim.App.1990); Miller v. State, 565 So.2d 275, 276 (Ala.Crim.App.1989) (Bowen, J., concurring specially), cert. quashed, 565 So.2d 277 (Ala.1990) (Maddox, J., dissenting). We think it sufficient to observe that Schmuck was decided under F.R.Crim.P. 31(c), which requires that a lesser offense be "necessarily included in the offense charged," whereas § 13A-1-9(a)(1) and (4) provide tests that are broader and that are tied to the proof, not just the charge in the indictment.