Robert Earl Self was indicted for a violation of § 13A-11-64, Code of Alabama 1975, which provides the following:
"A person who either:
 (1) Changes, alters, removes, or obliterates the name of the maker, model, manufacturer's number or other mark or identification of any firearm, or
 (2) Possesses, obtains, receives, sells, or uses a firearm after the maker, model, manufacturer's number or other mark or identification has been changed, altered, removed, or obliterated
is guilty of a Class C felony."
Self moved to dismiss the indictment on the ground that the statute is unconstitutionally vague because it does not require criminal intent and because it proscribes entirely innocent and lawful activity. Following a hearing, the trial judge declared § 13A-11-64 "unconstitutional and void" and dismissed the indictment. The trial court's order notes the following:
 "Defendant presented testimony to the effect that the name of the maker and other marks of identification are commonly *Page 320 
removed from firearms in the process of changing grips, barrels, butt plates and the like in the ordinary, usual and lawful course of owning and using firearms. This evidence was not controverted by the State, as indeed it could not be.
". . .
 "The Legislature in enacting § 13A-11-64 no doubt intended to address the problem created by the obliteration or changing of identifying numbers on stolen or other misused firearms; but the statute as written permits the punishment of innocent acts as well as acts which are evil in nature. However laudable the purpose of the enactment, the terms of this statute are such that persons of common intelligence must necessarily guess at its meaning and differ as to its application."
From this order, the State appealed, pursuant to Rule 17 (a), A.R.Cr.P. Temp.
A search of the statutory provisions similar to Alabama's §13A-11-64 indicates that aside from the federal enactments, which have been construed to be "public welfare" offenses requiring no specific intent, United States v. Freed,401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), there are no state statutes which have been the subject of constitutional challenge based upon lack of a stated criminal intent. Although § 13A-11-64 is similar to the National Firearms Act, 26 U.S.C. § 5861
(g)-(1), we are inclined to hold that it is not a "strict liability" or "public welfare" offense, for the following reasons: (1) Section 13A-2-4, Code of Alabama (1975), states a policy contrary to the imposition of strict liability in the absence of clear legislative intent; (2) the history, policy, and purpose of the federal weapons legislation are so different from those of the Alabama provision that we do not believe our legislature intended to impose criminal liability in the absence of criminal intent; (3) the penalty for violation of the statute is severe and may be imposed only for "blameworthy conduct," Walker v. State, 356 So.2d 672, 674
(Ala. 1977); (4) an analogous Alabama statute dealing with the falsification of vehicle identification numbers clearly requires criminal intent; and (5) the modern trend in state legislation on the same subject is to require mental culpability.
Section 13A-2-4, Code of Alabama, 1975, states the following:
 "(b) Although no culpable mental state is expressly designated in a statute defining an offense, an appropriate culpable mental state may nevertheless be required for the commission of the offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability states a crime of mental culpability." (Emphasis added.)
Because §§ 13A-11-64 (1) and (2) contain no language "clearly indicating a legislative intent to impose strict liability," such as "whether or not the defendant intended to conceal the identity of the firearm," or "whether or not the defendant had knowledge of the change, alteration, removal, or obliteration," we believe the legislature intended that the crime be one of mental culpability. See Ex parte Murry, 455 So.2d 72, 75 (Ala. 1984) (construing the capital offense of murder of a police officer to require proof of the defendant's knowledge that victim was a police officer).
Although § 13A-11-64 is similar to the federal firearms legislation held not violative of the Due Process Clause for lack of a specific intent requirement, Freed, supra, in our judgment, a culpable mental state should be required for violation of the Alabama statute because the history, policy, and purpose of § 13A-11-64 differ from those behind the federal legislation on the same subject. The 1968 amendments to the Federal and National Firearms Acts included a congressional "Findings and Declaration" which indicates that Congress viewed the issue of firearms traffic and misuse as an essentiallynational problem whose solution could be found primarily in *Page 321 
more stringent federal control. Omnibus Crime Control and Safe Streets Act of 1968, § 901, Pub.L. No. 90-351, 82 Stat. 225-26. Legislation setting up a central registry of firearms distribution information, see 26 U.S.C. § 5841 (a), and providing tougher penalties for violation of existing firearm laws, see 26 U.S.C. § 5871, was part of the congressional attempt to solve the weapons-traffic problem at the national level. In addition, control of the manufacture, importation, and sale of firearms was accomplished within the framework of a federal taxing scheme, see 26 U.S.C. § 5821 (a). As the United States Supreme Court has observed, the National Firearms Act "uses a criminal penalty to secure recorded evidence of the disposition of [firearms] as a means of taxing and restraining the traffic." United States v. Freed, 401 U.S. at 609-610,91 S.Ct. at 1118 (quoting United States v. Balint, 258 U.S. 250,253-54, 42 S.Ct. 301, 303, 66 L.Ed. 604 (1922)).
In contrast, Alabama's statute is neither national in scope nor regulatory in nature. It is not part of an overall taxing and recording scheme. It is an isolated, purely criminal provision, whose stiff penalty, if imposed without regard to mental culpability, could not easily be justified by the State's police power to require those who would possess the prohibited firearms to do so at their peril. Compare Freed, supra.
Although decisions construing a federal act after which a state statute is patterned are often persuasive, see generallySutherland Statutory Construction § 52.02 (Sands 4th ed. 1984), when the purpose and policy of the federal enactment are different from those of the state legislation, decisions construing the former have no application to the latter.Freeman v. Decatur Loan Finance Corp., 140 Ga. App. 682,231 S.E.2d 409, 411 (1976); Vasys v. Metropolitan DistrictCommission, 387 Mass. 51, 438 N.E.2d 836, 839 (1982) ("We do not follow the federal precedent, however, when the federal result is dictated by some principle of federal law not found in the law of Massachusetts").
 "Similar statutes of other [jurisdictions] comprise a type of extrinsic aid deserving special attention in the process of interpretation. However, statutes having different historical origins and serving different purposes, even though both pertain to the same subject, have no interpretive relevance in regard to each other." Sutherland Statutory Construction § 52.01 at 521 (Sands 4th ed. 1984).
In Walker, 356 So.2d at 673, the Alabama Supreme Court itemized characteristics shared by many of the "public welfare" offenses for which strict liability could be imposed under the State's police power. It concluded that because the Controlled Substances Act carried severe penalties (two to fifteen years' imprisonment and a fine up to $25,000) it was not a mere regulatory measure authorizing conviction without fault. Seealso McCrary v. State, 429 So.2d 1121, 1125 (Ala.Cr.App. 1982), cert. denied, 464 U.S. 913, 104 S.Ct. 273, 78 L.Ed.2d 254
(1983). The same rationale applies, with perhaps greater force, to the sentence allowed under § 13A-11-64. Not only is the maximum possible punishment (ten years) severe, but it has been doubled by the legislature for conduct which is arguably less
blameworthy than that prohibited by the statute's predecessor (possession carrying a presumption of obliteration penalized by imprisonment up to five years; mere possession with no imputation of actual obliteration penalized by imprisonment up to ten years). See, Ala. Code 1940, Tit. 14, § 184; recodified as Ala. Code 1975, § 13-6-162; transferred to Ala. Code 1975, §13A-11-82 (Supp. 1980); replaced by Ala. Code 1975, § 13A-11-64
(1982 Replacement Volume).
In light of the directive in § 13A-2-4 that, "[a]lthough no culpable mental state is expressly designated in a statute defining an offense, an appropriate culpable mental state may nevertheless be required for commission of the offense," we do not believe our legislature intended such a severe punishment for the following conduct, which, as appellee points out in his brief, would subject one to liability under § 13A-11-64 *Page 322 
if no culpable mental state were required:
 "1) A citizen purchases a fine Browning double-barrel shotgun for his son for Christmas. Because the stock is too long, the purchaser asks the dealer to shorten the stock by cutting off a portion of same and placing a rubber recoil pad thereon. The butt plate attached to the stock bears the name of the manufacturer, Browning, and is cut off by the dealer and discarded when the rubber recoil pad is installed. The father gives the firearm to his son for Christmas. The son several weeks later lends it to his cousin to go hunting. Under § 13A-11-64
the dealer is guilty for removing the name of the maker and discarding the unneeded butt plate which contained the name Browning. The father is guilty of possession of the altered firearm. The son and relative is likewise guilty even though they had no knowledge that this recoil pad had been installed and the manufacturer's name removed in the discarding of the butt plate because the statute requires no knowledge or criminal intent.
 "2) State Trooper Smith, a pistol team member, removes the handgrips from his .357 magnum revolver, and installs a set of custom made handgrips made specifically for his hand. This requires Trooper Smith to remove the manufacturer's name and mark of identification, (the Colt name and logo, which is on virtually every set of grips for every revolver Colt makes). He places the Colt grips in his desk, holsters his gun, and goes to work. He is now a felon, having removed the manufacturer's name and mark of identification from his revolver. Since he removed same and now possesses same, he has violated both sections of the statute." Brief of appellee at 6-8.
Our assumption that the legislature did not intend to subject conduct to such serious criminal penalties without requiring a culpable mental state is strengthened by reference to §32-8-86, Code of Alabama 1975 (1983 Replacement Volume), dealing with the removal or falsification of vehicle identification numbers. That statute provides:
 "(a) A person who willfully removes or falsifies an identification number of a vehicle, engine, transmission or other identifiable component part of a vehicle is guilty of a Class A misdemeanor and shall be punished as required by law.
 (b) A person who, willfully and with intent to conceal or misrepresent the identity of a vehicle, engine, transmission or other identifiable component part of a vehicle or removes or falsifies an identification number of the same is guilty of a Class C felony and shall be punished as required by law.
 (c) A person who buys, receives, possesses, sells or disposes of a vehicle, or an engine, transmission or other identifiable component part of a vehicle, knowing that an identification number of the same has been removed or falsified, is guilty of a Class A misdemeanor and shall be punished as required by law.
 (d) A person who buys, receives, possesses, sells or disposes of a vehicle, engine, transmission or other identifiable component part of a vehicle, with knowledge that an identification number of same has been removed or falsified and with intent to conceal or misrepresent the identity of same is guilty of a Class C felony and shall be punished as required by law.
 (e) A person who removes a license plate or tag from a vehicle or affixes to a vehicle a license plate or tag not authorized by law for use on it, in either case with intent to conceal or misrepresent the identity of a vehicle or its owner, is guilty of a Class A misdemeanor and shall be punished as required by law." (Emphasis added.)
Not only do subsections (a) and (c) of § 32-8-86 require a general criminal intent ("willfully," "knowing that . . ."),see State v. Honda, 387 So.2d 219 (Ala.Civ.App. 1980), but subsections (b), (d), and (e) require the specific criminal intent to "conceal or misrepresent the identity" of a motor vehicle or motor vehicle part. The legislative *Page 323 
objective of the uniform motor vehicle antitheft provisions, of which § 32-8-86 is representative, see State v. Spurlock,393 So.2d 1052 (Ala.Cr.App. 1981), is to curb trafficking in stolen automobiles and automobile parts, see People v. Sequin,199 Colo. 381, 609 P.2d 622, 625 (Colo. 1980) (construing Colo.Rev.Stat. § 42-5-102 (2) (1975) (Supp. 1979).
If the Alabama legislature required a specific intent to violate the vehicle identification number concealment provisions of § 32-8-86 notwithstanding the enormous trade in stolen vehicles, we think it reasonable to find a requirement of a specific intent to violate the Alabama firearms obliteration statute, since the possibility of innocent conduct in violation of the latter statute is at least as great as, if not much greater than, blameless removal of an automobile VIN.
Finally, we believe a criminal intent should be incorporated into § 13A-11-64 because the modern trend among other non-federal enactments on the subject is to require some type of mens rea. See, e.g., Cal. Penal Code § 12094 (West 1982); Ky. Rev.Stat.Ann. §§ 527.030, 514.120 (1985 Replacement Volume); Mich.Comp. Laws Ann. § 750.230 (1968) (Supp. 1985); N Y Penal Law §§ 265.00 (7), 265.02 (McKinney 1980), supra at 9-10. Because the obvious aim of § 13A-11-64 (1) is to prohibit tampering with the identifying marks on a firearm which would render the weapon unidentifiable, and because this statutory purpose is virtually identical to the purpose of the VIN falsification provisions of § 32-8-86, we believe the degree of culpability required for the commission of an offense under §13A-11-64 (1) should comport with the statutory purpose, i.e., that a person who
 "(1) willfully, changes, alters, removes, or obliterates the name of the maker, model, manufacturer's number or other mark or identification of any firearm, with intent to conceal or misrepresent the identity of the firearm"
is guilty of a Class C felony.
Similarly because the goal of § 13A-11-64 (2) is to prohibit the criminal possession, etc., of a firearm whose identifying marks have been obliterated, and because this objective is equivalent to the purpose of the VIN falsification provisions of § 32-8-86, we believe the mental state required for criminal
possession, etc., should reflect the statute's goal, i.e., that a person who
 "(2) possesses, obtains, receives, sells, or uses a firearm with knowledge that the maker, model, manufacturer's number or other mark or identification has been changed, altered, removed or obliterated and with intent to conceal or misrepresent the identity of the firearm."
is guilty of a Class C felony.
We do not find § 13A-11-64 unconstitutional. We hold, as a matter of statutory construction, that criminal intent is necessary for the commission of the offense defined in §13A-11-64. The judgment of the circuit court is reversed. This cause is remanded to the circuit court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.