The appellant, Mickey Wayne Burnett, was convicted of three counts of vehicular homicide, violations of § 32-5A-192, Ala. Code 1975. The trial court sentenced him to five years in prison on each count, but split the sentences and ordered him to serve consecutive terms of one year in prison followed by four years on probation on each count. It further ordered that, as a condition of his probation, he could not drive at any time for any reason. The appellant filed a motion for a new trial, which was denied by operation of law. This appeal followed. *Page 575 
 I.
The appellant first argues that § 32-5A-192, Ala. Code 1975, is unconstitutional because it "impos[es] felony sanctions in the absence of a culpable mental state." (Appellant's brief at p. 5.) Section 32-5A-192
contains two terms that could be read to define the state of mental culpability for vehicular homicide — "unlawfully" and "unintentionally." Because we find that the term "unlawfully" defines the culpable mental state required under that statute, the appellant's argument is not well-taken.
Section 13A-2-2, Ala. Code 1975, specifically defines four states of mental culpability: "intentionally," "knowingly," "recklessly," and "criminal negligence." Although the Alabama Criminal Code does not define "unlawfully" as that term is used in § 32-5A-192, "it seems apparent that those who helped to draft the Alabama Criminal Code were aware of the problems caused when statutes set out a culpable mental state and express it in different words." Ex parte Harper, 594 So.2d 1181,1189 (Ala. 1991), cert. denied, 506 U.S. 918, 113 S.Ct. 330,121 L.Ed.2d 248 (1992). The commentary to § 13A-2-2 points out that the drafters of the Criminal Code recognized states of mental culpability other than those defined in that section:
 "It would be impossible to review, much less reconcile and make clear and uniform, the myriad of Alabama statutes and cases that have employed or discussed some term of mental culpability. Such mental terms and concepts, while necessarily difficult to articulate, sometimes have been vaguely or only partly defined, or otherwise seem imprecise or inconclusive, unclear or ambiguous, even confusing or contradictory, or overrefined with technical, obscure and often subtle, if not dubious, distinctions. These adverbial terms include, e.g.: `intentionally,' `willfully,' `purposely,' `designedly,' `knowingly,' `deliberately,' `maliciously,' `with premeditation,' `recklessly,' `negligently,' `with culpable negligence,' `with gross negligence,' `with criminal negligence,' `without due caution,' `wickedly,' `unlawfully,' `wrongfully' and scores of others."
(Emphasis added.) Based upon this commentary, we conclude that, although "unlawfully" is not one of the terms specifically defined in §13A-2-2, the legislature intended for that term to be recognized as a state of mental culpability when used in a statute defining a criminal offense.
Because the Criminal Code does not define "unlawfully," we must determine where that term falls on the continuum of mental culpability in relation to those terms that are specifically defined in § 13A-2-2. First, we note that "unlawfully" does not convey the same meaning as "intentionally" because the term "unintentionally" is used in §32-5A-192. Second, the Alabama Supreme Court has already determined that "unlawfully" cannot be equated with the culpable mental state of "knowingly" defined in § 13A-2-2. Ex parte Harper, 594 So.2d at 1190-91. Finally, in Ex parte Long, 600 So.2d 982 (Ala. 1992), the Alabama Supreme Court "reinterpret[ed] the relative degrees of culpability of vehicular homicide and criminally negligent homicide," stating that vehicular homicide "will ordinarily be a more culpable offense than criminally negligent homicide." 600 So.2d at 987. Therefore, the culpable mental state of "unlawfully" must fall on the continuum of culpability somewhere between "knowingly" and "criminal negligence."
We must now attempt to discern the meaning of the term "unlawfully" as it appears in § 32-5A-192. Under the "plain meaning" theory of statutory construction, we must accord a term its common and *Page 576 
ordinary meaning when that term is not defined in the Code.
 "When the plain meaning of a statute can be gleaned from its words, it should be so construed. It is well accepted that this court, in interpreting a statute, `will give words used in a statute their "natural, plain, ordinary, and commonly understood meaning."' Ex parte Etowah County Board of Education, 584 So.2d 528, 530 (Ala. 1991); Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219 (Ala. 1984); Morgan County Commission v. Powell, 293 So.2d 830
(Ala. 1974)."
R. T. M. v. State, 677 So.2d 801, 803-04 (Ala.Cr.App. 1995).
Black's Law Dictionary 1536 (6th ed. 1990) defines the term "unlawful" as follows:
 "That which is contrary to, prohibited, or unauthorized by law. That which is not lawful. The acting contrary to, or in defiance of the law; disobeying or disregarding the law. Term is equivalent to `without excuse or justification.'"
(Emphasis added.) Consistent with this definition, early caselaw recognized that "unlawful" means without legal excuse or justification.See Williams v. State, 27 Ala. App. 504, 175 So. 335 (1937); Randle v.Payne, 39 Ala. App. 652, 107 So.2d 907 (1958) (Cates, J., dissenting), cert. denied, 268 Ala. 697, 107 So.2d 913 (Ala. 1959); Tatum v. State,66 Ala. 465 (1880). Based on these definitions, we conclude that the term "unlawfully," as it is used in § 32-5A-192, means "without legal excuse or justification." Therefore, a person commits the offense of vehicular homicide when he or she, acting unintentionally and without legal excuse or justification, proximately causes the death of another individual while violating regulatory laws governing the operation of automobiles and traffic control.
For these reasons, we conclude that the term "unlawfully," as it is used in § 32-5A-192, describes the culpable mental state required for vehicular homicide. Therefore, the appellant's argument is without merit.
 II.
The appellant's second argument is that the evidence was not sufficient to sustain his convictions because the State allegedly did not prove the corpus delicti of the homicides. He initially contends that the State did not establish the identities of the victims because no one testified that the individuals named in the indictment were in fact dead. He also claims that the State did not establish the cause of the victims' deaths.
To prove the corpus delicti of a homicide, the State must establish the death of the victim named in the indictment and that the death was caused by the defendant. See Potter v. State 661 So.2d 255, 259 (Ala.Cr.App. 1993); Scanland v. State, 473 So.2d 1182 (Ala.Cr.App.), cert. denied,474 U.S. 1035, 106 S.Ct. 602, 88 L.Ed.2d 581 (1985). "[A] homicide victim's identity can be established by circumstantial evidence. Toddv. State, 472 So.2d 707 (Ala.Cr.App. 1985); Dolvin v. State, 391 So.2d 666
(Ala.Cr.App. 1979), aff'd, 391 So.2d 677 (Ala. 1980)." Bui v. State,551 So.2d 1094, 1099 (Ala.Cr.App. 1988). Finally,
 "[e]xpert testimony . . . is not always necessary to establish the cause of death. Dismukes v. State, Ala.Cr.App., 346 So.2d 1170, reversed on rehearing, 346 So.2d 1170, cert. den. 346 So.2d 1177 (1977). The question whether, under all the circumstances, death was the result of the defendant's assault on the deceased, is one of fact for the jury. Dismukes, supra; Gurley v. State, *Page 577 36 Ala. App. 606, 61 So.2d 137 (1952); Hall v. State, 34 Ala. App. 246, 38 So.2d 612 (1949). If there is any proof, direct or circumstantial, to establish the corpus delicti, the issue is one of fact for the jury and not one of law for the court. McCall v. State, 262 Ala. 414, 79 So.2d 51 (1955); McDonald v. State, 56 Ala. App. 147, 320 So.2d 80 (1975); Cook v. State, 43 Ala. App. 304, 189 So.2d 595 (1966)."
Hollis v. State, 399 So.2d 935, 938 (Ala.Cr.App. 1981).
In this case, the indictment charged the appellant with vehicular homicide in connection with the deaths of Lisa Williams Lewis, Marissa Lewis, and Nicholas Lewis. The evidence showed that Lisa Williams Lewis was driving south on Highway 195 in Winston County when her Chevrolet Beretta automobile was struck by a Chevrolet Corvette automobile driven by the appellant. Nicholas Lewis, Marissa Lewis, and Victoria Gravitt were passengers in the Beretta. Officer Tommy Elliott and State Trooper Mark McCormick testified that Lisa Williams Lewis and Marissa Lewis were dead when they arrived at the scene. Elliott, a certified emergency medical technician, performed CPR on Nicholas Lewis at the scene until an ambulance arrived to take him to the hospital. Elliott testified that, after he placed Lisa Williams Lewis and Marissa Lewis in the hearse and secured the scene of the accident, he went to the hospital and learned that Nicholas Lewis was dead when the ambulance arrived at the hospital.
McCormick, who had experience investigating traffic homicides, testified that, based on his observations of the skid marks at the scene, he concluded that the appellant's vehicle ran off of the roadway, reentered the highway, and started spinning. It spun into the southbound lane and hit the Beretta Lisa Williams Lewis was driving. According to McCormick, at the point of impact, the appellant "was nearly sideways in the southbound lane, traveling north in the southbound lane." (R. 73.) He also estimated that the appellant was traveling at a speed of at least 63 mph and that Lewis was traveling at a speed of 55 mph when the accident occurred. (R. 61-62.)
Based on the above-referenced testimony, the State presented sufficient evidence to establish that the victims named in the indictment were dead and that the collision with the appellant's vehicle caused their deaths. Accordingly, the appellant's argument is without merit.
 III.
The appellant's third argument is that the trial court erroneously admitted "scientific evidence" to establish the rate of speed at which he was traveling before the accident. Specifically, he complains that the trial court should not have allowed McCormick to testify regarding a "drag-sled test" he conducted, which showed that the appellant's vehicle was traveling at approximately 63 miles per hour when the accident occurred. After McCormick explained how the test was conducted, but before he testified about the results of that test, the following occurred:
 "[Defense counsel]: I object. I don't think there is sufficient evidence for this test as to the reliability of it, common use of it.
"The Court: Do you want to qualify him any further?
"[Prosecutor]: Yes."
(R. 56.) The prosecutor then elicited further testimony to show the reliability of the test. When the prosecutor again questioned McCormick about the results of the test, the appellant did not *Page 578 
renew his objection. Accordingly, the appellant did not obtain an adverse ruling from which to appeal. Therefore, he did not properly preserve the issue of the reliability of the "drag-sled test" for our review. See Wright v. State, 740 So.2d 1147 (Ala.Cr.App. 1999).
The appellant also challenges the relevance of the "drag-sled test." However, he raises this issue for the first time on appeal. Therefore, it is not properly before this court. See Finch v. State, 715 So.2d 906
(Ala.Cr.App. 1997).
 IV.
The appellant finally contends that the trial court erred when it ordered him not to drive during his probationary period. However, he did not object to this condition of his probation at the sentencing hearing, in his motion for a new trial, or in any other post-trial motion. Therefore, he did not properly preserve this issue for this court's review. See Long v. State, 530 So.2d 868 (Ala.Cr.App. 1987).
For the above-stated reasons, we affirm the trial court's judgment.
AFFIRMED.
LONG, P.J., concurs; McMILLAN, J., concurs in the result; COBB and FRY, JJ., dissent.