I understand the author of the main opinion has an interest in saving and buttressing Alabama's vehicular homicide statute, § 32-5A-192, Ala. Code 1975. However, I disagree with the effort to extrapolate a culpable mental state from the term "unlawfully." Though the main opinion attempts to supply a guilty scienter to this statute, even a brisk reading reveals none. Hence, I do not believe that the attempt to save this statute is legally sound. Therefore, I must respectfully dissent from the main opinion.
The State's evidence tended to prove the following. At approximately 9:35 p.m. on December 18, 1993, 16-year-old Mickey Burnett was driving his father's 1984 Chevrolet Corvette automobile north on Highway 195 in Winston County. He and a passenger were following another automobile to a friend's home in Haleyville. According to the state trooper who reconstructed the accident, Burnett was travelling around 63 miles per hour in a 55 mile-per-hour zone. While the state trooper's notes indicate the road was dry, other witnesses recalled that the night was wet and foggy. It was cold; the temperature that night was around 35 degrees. As Burnett approached a curve in the road, his right front tire left the roadway and went onto the shoulder of the road. When Burnett attempted to bring the automobile back onto the pavement, he apparently overcorrected and put the Corvette into a spin. Burnett's automobile skidded out of control and crossed the roadway into the southbound lane, where it struck a Chevrolet Beretta automobile being driven by a woman who had three young children as passengers. Upon impact, the driver and her 22-month old daughter were ejected from the car and killed. Her eight-year-old son survived the impact, but died shortly after being taken to the hospital. Another child survived. Both Burnett and his passenger were ejected from their automobile, which was totally destroyed by the impact. Both were seriously injured, but both survived. Alcohol was not a factor. Burnett had just turned 16 in September of that year and did not have a criminal record. *Page 581 
This is not a case which a defendant was drinking and driving, playing "chicken" or racing on the highway, or using a car as a weapon against pedestrians. This is a case of a 16-year-old newly licensed driver who, through negligence, lost control of his car on a dark country highway. Unfortunately for all concerned, a horrible tragedy occurred, and an innocent young mother and her two children were killed when Burnett's vehicle skidded out of control into the oncoming lane of traffic and struck their car. The question is, did Burnett have the necessary criminal intent to commit a felony, the punishment for which is imprisonment for three years? We do not know the answer because the vehicular homicide statute is silent as to the culpable mental state necessary for the offense.
In pertinent part, § 32-5A-192 states:
 "(a) Whoever shall unlawfully and unintentionally
cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle . . . or to the regulation of traffic . . . shall be guilty of homicide when the violation is the proximate cause of death."
(Emphasis added.)
The trial court instructed the jury on the elements of vehicular homicide, as charged in the indictment, as follows:
 "[T]he first element is that [a particular person] is dead.
 "Second, that the defendant Mickey Wayne Burnett unlawfully and unintentionally caused the death of [a particular person] with a vehicle.
 "Three, that the defendant was engaged in speeding, reckless driving, driving on the wrong side of the road, or any combination of those three which apply to the operation or use of a vehicle or regulation of traffic.
 "And four, that the act was the proximate cause of the death of [a particular person.]"
(R. 130-31.)
The Alabama Constitution of 1901, Art. I, § 6, provides in part that "[no person shall] be deprived of life, liberty, or property, except by due process of law." "Legislative power to impose criminal sanctions to any conduct is restrained by the constitutional command that no person can be deprived of life, liberty, or property, except by due process of law." Smith v. People, 361 U.S. 147 (1959). Justice Cook, in his concurring opinion in Ex parte Knowles, 689 So.2d 832, 834-35 (Ala. 1997), voiced his concern that the vehicular homicide statute, which allows the imposition of criminal felony sanctions for an act of simple negligence, encroaches on the constitutional guarantees of due process. I share that concern.
The Alabama Code defines homicide thusly: "A person commits criminal homicide if he intentionally, knowingly, recklessly, or with criminal negligence causes the death of another person." § 13A-6-1, Ala. Code 1975. In Ex parte Long, 600 So.2d 982 (Ala. 1992), the Alabama Supreme Court, in a discussion of the lesser offenses included in the offense of murder based on statutory maximum punishments, opined that vehicular homicide must fall on the continuum of homicide somewhere between manslaughter, with a reckless culpable mental state, and criminal negligent homicide.
The main opinion, citing Long, concludes that the legislature must have intended that the word "unlawfully" describe the culpable mental state necessary to violate § 32-5A-192. The main opinion then states that "the culpable mental state of `unlawfully' must fall on the continuum of culpability somewhere between `knowingly' *Page 582 
and `criminal negligence.'" I disagree. It is my contention that the word "unlawfully" describes a person's conduct, not a person's state of mind.[1]
I realize that this court has in the past supplied a culpable mental state to other poorly drafted statutes. For instance, in State v. Self,492 So.2d 319 (Ala.Crim.App. 1986), this court supplied a criminal culpability to the offenses of changing, removing, or obliterating of identification marks or numbers on firearms and the possession of a firearm whose identification marks had been changed, by analogizing that statute to a similar statute that clearly set out a culpable mental state regarding identical conduct with automobile VIN numbers. In Self, the criminal culpability intended by the legislature was clear.
However, it is not clear what mental state the legislature intended when it enacted § 32-5A-192. One could easily argue that the legislature intended "criminal negligence" to be the correct standard, while others would maintain "recklessness" is the correct standard. What is apparent to me is that one's unlawful conduct must amount to something more than simple speeding, failure to dim lights, or crossing a double yellow line before a citizen can be branded a killer. What drivers among us have not been guilty of some minor traffic violation that, only by the grace of God, did not result in a serious, and possibly fatal, accident?
Given the constitutional guarantee of due process, "what level or degree of culpable conduct is necessary before a person can be imprisoned pursuant to [the vehicular homicide] statute?" Ex parte Knowles,689 So.2d 832 (Ala. 1997) (Cook, J., concurring specially); also, Exparte Beck, 690 So.2d 346 (Ala. 1997) (Cook, J., concurring specially). The Code seems to point in a definite direction. In pertinent part, § 13A-2-4(b), Ala. Code 1975, provides:
 "Although no culpable mental state is expressly designated in a statute defining an offense, an appropriate culpable mental state may nevertheless be required for the commission of that offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, states a crime of mental culpability."
"Culpable mental state" is defined in § 13A-2-1(6) as follows:
 "Such term means `intentionally' or `knowingly' or `recklessly' or with `criminal negligence,' as those terms are defined in Section 13A-2-2."
It is this statutory direction and the constitutional requirement of due process that led the author of the main opinion to infer a criminal state of mind from the word "unlawfully," ascribing a mental state more culpable than that required for criminal negligence to the term "without legal excuse or justification." The main opinion is correct in determining that our vehicular homicide statute should require a culpable mental state, for without such a requirement the vehicular homicide statute imposes a severe criminal liability upon the happening *Page 583 
of a certain set of circumstances, namely, a death caused by a person who commits a traffic violation. See Commonwealth v. Heck, 341 Pa. Super. 183,491 A.2d 212 (1985). As applied by the trial court in this case, the requirement that an underlying traffic violation be the cause of death did not add any element of a criminal state of mind to the offense. That is what allowed this jury to turn a young 16-year-old high school student into a felonious killer. And that is why the vehicular homicide statute, as it is currently written, violates the basic due process of law guaranteed to every citizen by the United States Constitution and the Alabama Constitution of 1901.
My rationale for this conclusion is in harmony with the conclusion reached by the Superior Court of Pennsylvania in 1985 in the case ofCommonwealth v. Heck, supra:
 "Included in the concept of due process is a degree of protection against the imposition of criminal liability without criminal intent on the part of the actor. The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.
". . . .
 "No doubt the [voluntary homicide] statute seeks to heighten the duty of care owed by drivers, and thereby to promote the public welfare by curbing the tide of senseless carnage on our highways. This important goal of the law is comparable to the public welfare interest in regulating the liquor trade. . . . However, all other relevant factors demonstrate overwhelmingly that the law is penal in nature. The penalties under the statute are not light but severe; a conviction `gravely besmirches' the reputation of the offender; and the very label `vehicular homicide' identifies the crime as one taken over from the common law hierarchy of crimes involving moral condemnation.
". . . .
 "[N]egligent behavior implies inadvertence and must therefore be sharply distinguished from voluntary harm-doing, i.e.[,] from conduct that includes at least an awareness of possible harm. . . . The vast difference between voluntary harm-doing and negligent damage was expressed by Mr. Justice Holmes's graphic terms that even a dog understands the difference between being kicked and being stumbled over.
". . . .
 ". . . Intentional, knowing, and reckless actions all involve the actor's consciousness of `endangering something socially valued'; the precise culpability level that applies depends on whether the actor intends a risk as the consequence of his actions, or knows the risk will be created by his actions, or is aware of the likelihood of the risk but chooses to disregard it.
 "In a fundamental sense the harshness of criminal punishment is fitting only for these types of consciously inflicted wrongs, and so traditionally the criminal law has concerned itself exclusively with conscious wrongdoing. Where harm is perpetrated inadvertently without awareness or choice, recovery for negligence may be had under the civil law, consistent with its aim to fairly shift the economic costs of injuries onto those responsible for them. Of course, when someone is killed through inadvertence of negligence, monetary recovery can never make up for the loss. But *Page 584 
even though there may be an unreasoning desire for retribution on the part of the victim's heirs, it can serve no rational purpose of the criminal law to subject the merely negligent actor to the additional punitive sanctions of the criminal law. [S]uch sanction serves none of the principal, preferred purposes of criminal prosecutions — deterrence, rehabilitation, and isolation of dangerous people from society. . . . One who is not aware of the criminality of his conduct cannot be deterred from performing it.
". . . .
 ". . . [T]he legislative decision to criminalize negligent driving if it happens to result in death does not make a true criminal of a merely negligent driver. Obviously such a driver never intends to take a life, and to make his negligence criminal based purely on this fortuitous outcome can have little deterrent effect on the incidence of negligent driving. A driver engaged in the negligent but unknowing commission of a traffic offense does not reflect at all on the possibility of killing someone; and it is almost absurd to suggest that he would drive more carefully if he knew it was a serious criminal offense to kill someone while driving negligently. A commentator has remarked thusly on `the fallacy of convicting the unfortunate driver':
 "`Our finest citizens drive on the highways and are, at times, guilty of traffic infractions. When such an infraction results in the death of another, a jail sentence is not needed for them to realize their wrong. They did not mean to kill the first time, and the resulting mental torture from feeling they took another's life will more than insure that their driving habits will be corrected in the future.'
 "Comment, The Fallacy and Fortuity of Motor Vehicle Homicide, 41 Neb.L.Rev. 793, 812-13 (1962)."
Commonwealth v. Heck, 341 Pa.Super. at 197-207, 491 A.2d at 219-226
(1985) (citations omitted).
Like the driver in Heck, and the Alabama drivers in Knowles and Beck, the evidence in this case proved no criminal culpability beyond simple negligence. Burnett was negligent in driving his automobile 8 miles over the speed limit on a foggy, cold night and, once he allowed his automobile to leave the roadway and then lost control of the car, he was certainly guilty, in a strict liability sense, of allowing his vehicle to stray into the wrong lane of traffic. Even though the indictment also listed reckless driving as one of the traffic infractions which caused the accident, the State presented no evidence of reckless driving.[2]
Thus, while the appellant's conduct did not approach criminality under any of the traditional mens rea requirements, Alabama's vehicular homicide statute allowed him to be branded a criminal killer and to be sentenced to three years' imprisonment.[3] *Page 585 
Alabama is one of only three states that allow a merely negligent driver to be jailed for more than two years for his negligence.Commonwealth v. Heck, supra, at 228. I believe such a result is too unfair to be countenanced by rule of law, and I would strike down Burnett's conviction as a violation of his constitutional right to due process of law.
Fry, J., concurs.
[1] It is interesting to note that the term "unlawful" is defined in § 13A-12-20, Ala. Code 1975, as "[n]ot specifically authorized by law," and is subsequently used as an adjective to describe gambling activities, not the state of mind of the gambler. An "unlawful gambling activity" would be gambling which has not been authorized by law. Yet, to be guilty of the crime of gambling, § 13A-12-21 requires a person toknowingly profit from "unlawful gambling activities." I also note that § 13A-12-20 was enacted some three years after § 13A-2-4(b), which required strict liability to be clearly stated in any statute, if that was the intent of the legislature.
[2] The trial court gave the following instruction to the jury concerning the definition of reckless driving: "Any person who drives any vehicle carelessly and heedlessly in willful or wanton disregard for the rights or safety of persons or property, or without due caution and circumspection, and at a speed or in a manner so as to endanger, or be likely to endanger, any person or property shall be guilty of reckless driving." (R. 133-34.)
[3] The injustice of letting serious criminal liability turn on the fortuity of a death on the highway is sadly illustrated by this case. The record indicates that two of the victims of this accident died after being ejected from their vehicle. Had this young mother and her children been properly restrained by seatbelts and child safety restraints their chances of surviving the impact would have greatly increased. And had they survived the impact, Burnett would have faced no more than a civil action.
The following hypothetical examples set out by the court in Heck also illustrate the problem of basing serious criminal liability solely on a death caused by a traffic infraction:
 "Ex. 1: Suppose D's speedometer is off by 5 MPH. For the past hour he has been travelling along the freeway at 60 MPH, although his speedometer registers only 55 MPH. He should know (a jury decides) that his speedometer is slow, and thus should know that he is violating the law by speeding. D kills A, who is stopped by the roadside changing a tire and steps onto the highway while D is passing. D's violation of the maximum speed law caused A's death, for if D hadn't been speeding, A would have finished with his chore and gone before D arrived at that spot on the road. D is liable for vehicular homicide.
 "Ex. 2: (Stated in the alternative). Suppose D inadvertently fails to dim his headlights, blinding A and causing him to run his car off the road and kill himself; or suppose D forgetfully neglects to turn on his lights before starting on a trip one night, with the result that A, while attempting to turn his vehicle onto the highway, is broadsided and killed. Either way, D is guilty of vehicular homicide, and under the statutory scheme becomes a `criminal killer.'
 "Ex. 3: In this example, we hypothecate that D is a reputable and law-abiding citizen driving to work one morning. He attempts to turn at an intersection with limited visibility, and fails to see a motorcycle approaching from the opposite direction at 55 MPH, 15 MPH over the speed limit. He is not aware of the motorcycle until it is too late, nor can his momentary inattention be characterized as a `gross deviation' from reasonable care in the circumstances. D may be found guilty of vehicular homicide.
 "The possible contributory negligence of the victims in these cases will not prevent the defendants from being held criminally liable. This holds true even if the victim's negligence contributing to the accident is greater than the defendant's, so as to bar the victim's estate from winning damages in a civil suit. The rule is that the contributory negligence of the victim is not a defense to a criminal charge of homicide by vehicle if the defendant's actions were a substantial factor in causing the death."
Commonwealth v. Heck, 341 Pa.Super. at 212-13, 491 A.2d at 226-27.