816 So.2d 92 (2000)
Julia Marie EDWARDS
v.
STATE.
CR-96-1542.
Court of Criminal Appeals of Alabama.
February 25, 2000.
Rehearing Denied April 21, 2000.
Mark John Christensen, Andalusia, for appellant.
Bill Pryor, atty. gen., and Andy Scott Poole, asst. atty. gen., for appellee.
LONG, Presiding Judge.
AFFIRMED BY UNPUBLISHED MEMORANDUM. NO OPINION.
McMILLAN AND BASCHAB, JJ., concur.
COBB AND FRY, JJ., dissent.
COBB, Judge, dissenting.
I write to reiterate my dissent in Burnett v. State, 807 So.2d 573 (Ala.Cr.App. 1999), in which I expressed my opinion that Alabama's vehicular homicide statute, § 32-5A-192, Ala.Code 1975, is unconstitutional because the statute allows a citizen to be convicted of a criminal homicide without requiring proof of a culpable mental state amounting to, at least, criminal negligence. This court's effort in Burnett to extrapolate a culpable mental state from the term "unlawfully" is the focus of my disagreement with that opinion. Although the court attempted to graft a guilty scienter onto this statute, there simply is none. Hence, I do not believe that the court's attempt to save this statute is legally sound. Therefore, I respectfully dissent.
The majority ably sets forth in its unpublished memorandum the pertinent facts upon which Edwards was convicted. This is not a case which the appellant was drinking and driving, playing "chicken" or racing on the highway, or using a car as a weapon against pedestrians. This is a case of a young mother rushing to seek medical treatment for her six-month-old baby. Unfortunately for all concerned, a tragedy occurredan innocent man died when Edwards passed another car on a portion of a two-lane road marked with a double yellow line. The question is, did she have the necessary criminal intent to commit a crime deserving imprisonment for three years? We do not know the answer to this because the culpable mental *93 state is omitted from the vehicular homicide statute.
The majority implies that the question of the constitutionality of this statute was not raised at trial, and, thus, was not preserved for our review. I do not agree. Although Edwards did not specifically argue the constitutionality of § 32-5A-192, there was a lengthy discussion at the charge conference about the failure of the statute to include a culpable mental state. After the jury was given its instructions, Edwards once again highlighted her dissatisfaction with the court's failing to charge the jury on the culpable mental state required to convict her of vehicular homicide. Although the State did not prevail in its request that the trial court charge the jury that vehicular homicide was a strict liability offense, neither did Edwards prevail in urging the court to supply the statute with at least the same culpable mental state necessary to support a charge of criminal negligence. The court chose simply to read the statute to the jury.
I am convinced that the protracted debate over whether this poorly drafted statute contained a defined culpable mental state, or whether it is a strict liability statute, was sufficient to preserve the issue of its constitutionality. Bland v. State, 395 So.2d 164, 168 (Ala.Crim.App.1981) ("The trial court must be apprised of the basis for the objection with sufficient particularity to allow an informed decision to be made on the particular legal issues involved."). It is the very lack of a defined culpable mental state within the vehicular homicide statute that is the constitutional dilemma at hand. This is particularly so because the trial court, in refusing to give Edwards's requested charge on state of mind, effectively held that the Legislature intended § 32-5A-192 to include any unintentional conduct that violated the law and therefore was much broader than the criminally negligent homicide statute. While I agree with the trial court regarding the Legislature's intent, I disagree that a criminalization of unintentional conduct not amounting to criminal negligence can be constitutional.
In pertinent part, § 32-5A-192 states:
"(a) Whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle ... or to the regulation of traffic ... shall be guilty of homicide when the violation is the proximate cause of death."
(Emphasis added.) In Burnett, this court concluded that the word "unlawfully" described the culpable mental state necessary to violate § 32-5A-192. This court stated that "the culpable mental state of `unlawfully' must fall on the continuum of culpability somewhere between `knowingly' and `criminal negligence.'" I disagree. I believe that "unlawfully" is a word that describes a person's conduct, not a person's state of mind.[1] In Burnett, the court relied on Ex parte Long, 600 So.2d 982 (Ala.1992), in deciding to supply "unlawfully" as the mental state necessary to make § 32-5A-192 a felony. Though the degree *94 of culpability required by § 32-5A-192 is discussed in Long, the issue before the Alabama Supreme Court in that case was whether vehicular homicide was a lesser included offense of murder. Hence, Ex parte Long is clearly distinguishable from Burnett.
I realize that this court has in the past supplied a culpable mental state for other poorly drafted statutes. For instance, in State v. Self, 492 So.2d 319 (Ala.Crim.App. 1986), this court supplied a criminal culpability to the changing, removing, or obliterating of identification marks or numbers on firearms and the possession of a firearm where the identification marks had been changed, by comparing that statute with a similar statute that clearly set out a culpable mental state for identical conduct with regard to automobile VIN numbers. In Self, the criminal culpability intended by the Legislature was clear. However, it is not clear what mental state was intended by the Legislature when it enacted § 32-5A-192. Some could easily argue that the Legislature intended "criminal negligence" to be the standard, while others could maintain that "recklessly" is the standard. What is apparent to me is that one's unlawful conduct must amount to something more than simple speeding, failing to dim lights, or crossing a double yellow line before a citizen can be branded a criminal killer. What drivers among us have not been guilty of some minor traffic violation and, only by the grace of God, avoided being involved in a fatal car accident as a result of that violation?
The Alabama Constitution of 1901, Art. I, § 6, provides, in part, that no person shall "be deprived of life, liberty, or property, except by due process of law." Given the constitutional guarantee of due process, "what level or degree of culpable conduct is necessary before a person can be imprisoned pursuant to [the vehicular homicide] statute?" Ex parte Knowles, 689 So.2d 832 (Ala.1997)(Cook, J. concurring specially); see, also, Ex parte Beck, 690 So.2d 346 (Ala.1997)(Cook, J., concurring specially).
The Alabama Code seems to point us in a definite direction: In pertinent part, § 13A-2-4(b), Ala.Code 1975, provides:
"Although no culpable mental state is expressly designated in a statute defining an offense, an appropriate culpable mental state may nevertheless be required for the commission of that offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, states a crime of mental culpability."
"Culpable mental state" is defined as follows in § 13A-2-1(6):
"Such term means `intentionally' or `knowingly' or `recklessly' or with `criminal negligence,' as those terms are defined in Section 13A-2-2."
It is this statutory and constitutional direction, requiring a culpable mental state amounting to, at the very least, criminal negligence, that led this court in Burnett to fashion a criminal state of mind out of the word "unlawfully," ascribing a mental state more culpable than criminal negligence to the term "without legal excuse or justification." This court correctly determined that our vehicular homicide statute should require such a culpable mental state, for without such a requirement, the vehicular homicide statute imposes a severe criminal liability merely upon the happening of a certain set of circumstances a traffic violation that results in a death. See Commonwealth v. Heck, 341 Pa.Super. 183, 491 A.2d 212 (1985). As applied by the trial court in this case, the requirement that an underlying traffic violation *95 be the cause of death did not also require any element of a criminal state of mind to the offense. That is what allowed this jury to turn a frantic mother into a felonious killer. And that is why the vehicular homicide statute, as it is currently written, violates the basic due process of law guaranteed to every citizen by the United States Constitution and the Alabama Constitution of 1901.
My rationale for this conclusion is in harmony with the rationale of the Superior Court of Pennsylvania in 1985 in the case of Commonwealth v. Heck, supra:
"Included in the concept of due process is a degree of protection against the imposition of criminal liability without criminal intent on the part of the actor. The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.
". . . .
"No doubt the [voluntary homicide] statute seeks to heighten the duty of care owed by drivers, and thereby to promote the public welfare by curbing the tide of senseless carnage on our highways. This important goal of the law is comparable to the public welfare interest in regulating the liquor trade.... However, all other relevant factors demonstrate overwhelmingly that the law is penal in nature. The penalties under the statute are not light but severe; a conviction `gravely besmirches' the reputation of the offender; and the very label `vehicular homicide' identifies the crime as one taken over from the common law hierarchy of crimes involving moral condemnation.
". . . .
"... [N]egligent behavior implies inadvertence and must therefore be sharply distinguished from voluntary harmdoing, i.e. from conduct that includes at least an awareness of possible harm.... The vast difference between voluntary harm-doing and negligent damage was expressed in Mr. Justice Holmes's graphic terms that even a dog understands the difference between being kicked and being stumbled over.
". . . .
"... Intentional, knowing, and reckless actions all involve the actor's consciousness of `endangering something socially valued'; the precise culpability level that applies depends on whether the actor intends a risk as the consequence of his actions, or knows the risk will be created by his actions, or is aware of the likelihood of the risk but chooses to disregard it.
"In a fundamental sense the harshness of criminal punishment is fitting only for these types of consciously inflicted wrongs, and so traditionally the criminal law has concerned itself exclusively with conscious wrongdoing. Where harm is perpetrated inadvertently without awareness or choice, recovery for negligence may be had under the civil law, consistent with its aim to fairly shift the economic costs of injuries onto those responsible for them. Of course, when someone is killed through inadvertence of negligence, monetary recovery can never make up for the loss. But even though there may be an unreasoning desire for retribution on the part of the victim's heirs, it can serve no rational purpose of the criminal law to subject the merely negligent actor to the additional punitive sanctions of the criminal law. [S]uch sanction serves none of the principal, preferred purposes of criminal *96 prosecutionsdeterrence, rehabilitation, and isolation of dangerous people from society.... One who is not aware of the criminality of his conduct cannot be deterred from performing it....
"... [T]he legislative decision to criminalize negligent driving if it happens to result in death does not make a true criminal of a merely negligent driver. Obviously such a driver never intends to take a life, and to make his negligence criminal based purely on this fortuitous outcome can have little deterrent effect on the incidence of negligent driving. A driver engaged in the negligent but unknowing commission of a traffic offense does not reflect at all on the possibility of killing someone; and it is almost absurd to suggest that he would drive more carefully if he knew it was a serious criminal offense to kill someone while driving negligently. A commentator has remarked thusly on `the fallacy of convicting the unfortunate driver':
"`Our finest citizens drive on the highways and are, at times, guilty of traffic infractions. When such an infraction results in the death of another, a jail sentence is not needed for them to realize their wrong. They did not mean to kill the first time, and the resulting mental torture from feeling they took another's life will more than insure that their driving habits will be corrected in the future. Comment, The Fallacy and Fortuity of Motor Vehicle Homicide, 41 Neb.L.Rev. 793, 812-13 (1962).'"
Commonwealth v. Heck, 341 Pa.Super. at 198-207, 491 A.2d at 219-26 (1985) (citations omitted).
As was the case in Heck, and in Knowles and Beck, the evidence in this case proved no criminal culpability beyond simple negligence. The jury rejected the State's theory that Edwards's passing on a double yellow line was a result of reckless behavior by finding her not guilty of reckless manslaughter. Thus, while the appellant's conduct did not approach criminality under any of the traditional mens rea requirements, Alabama's vehicular homicide statute allowed her to be branded a criminal killer and to be sentenced to three years' imprisonment.[2]
*97 My research indicates that Alabama is the only state, other than the District of Columbia, that allows a merely negligent driver to be incarcerated for more than two years. See Commonwealth v. Heck, 341 Pa.Super. at 214, 491 A.2d at 228; State v. Beayon, 158 Vt. 133, 605 A.2d 527 (1992). I believe such a result is too unfair to be countenanced by rule of law, and I would strike down Edwards's conviction because I believe it is the result of a violation of her constitutional right to due process of law.
FRY, J., concurs.
FRY, Judge, dissenting.
I concur completely with Judge Cobb's dissent, especially her conclusion that the question of the constitutionality of the vehicular homicide statute, § 32-5A-192, Ala.Code 1975, was adequately preserved for appellate review; however, I feel compelled to make some additional observations by reiterating my dissent in Burnett v. State, 807 So.2d 573, 585-86 (Ala.Cr. App.1999), stating:
"By dissenting, I in no way wish to be seen as minimizing the trauma suffered by the families of the victims in this case. I recognize that the hurt caused by a traffic fatality is due our eminent respect, but so is the Constitution of this State.
"Initially, I note that any defendant in this State is constitutionally guaranteed that the State will inform him or her of the crime with which he or she is chargedincluding the elements of that crime and the necessary scienter or degree of criminal intent required to commit that crime. See Lanier v. State, 733 So.2d 931, 936 (Ala.Cr.App.1998)(stating that `[a]n indictment must include all the essential elements that constitute the offense, and it must not leave any element open to inference'). Additionally, each element must be so clearly articulated by the trial court to the jury in a jury trial that the jury at least is presented with the opportunity to understand the applicable law and to apply that law to the facts the jury finds. If the issue of criminal intent or lack thereof is vague or ambiguous, neither the trial court nor the jury can perform its function and administer justice.
"The main opinion, with its conclusion that `"unlawfully," as it is used in § 32-5A-192, Ala.Code 1975, means "without legal excuse or justification,"' pulls and stretches bits and pieces of various legal definitions to attempt to arrive at a constitutionally definable state of mental culpability. However, the weaving is too thin, and like so many gossamer threads holding together an ethereal garment, the result is more apparent than real.
"In trying to buttress the notion of `unlawfully' as a recognized state of mental culpability, the main opinion cites the Commentary to § 13A-2-2, Ala. Code 1975, as authority for its conclusion. However, my reading of that paragraph sends me in the opposite direction. To me, the clear meaning of that paragraph is that the listed terms, which include `unlawful,' are not beacons of light to guide and define various mental states but are rather terms providing quagmires of confusion, imprecision, and ambiguity. In short, there is no authority for defining `unlawfully' to include a *98 state of mental culpability. `Unlawfully' simply defines an act or omission of conductnothing more.
"Finally, I agree with Judge Cobb that § 32-5A-192, Ala.Code 1975, as written, makes what would otherwise be a traffic violation, i.e., a misdemeanor citation issued by a law enforcement officer, a felony due only to the fact that a death was proximately caused by the violation. The Alabama Supreme Court in Ex parte Long, 600 So.2d 982 (Ala. 1992), stated that vehicular homicide must reside in the continuum of the lesser included offenses of murder somewhere between criminally negligent homicide and manslaughter. Accordingly, the state of mental culpability for vehicular homicide is somewhere between aggravated or gross negligence the required mental state for criminally negligent homicideand recklessness the required mental state for manslaughter. The main opinion requires nothing close to this level of mental culpability in its definition of `unlawfully.' Essentially, that opinion permits a felony conviction for a violation causing death that could be without either negligence or recklessness.
"In conclusion, because I do not believe that the main opinion provides a clear and precise concept of the degree of mental culpability required under § 32-5A-192, Ala.Code 1975, I must dissent."
NOTES
[1] It is interesting to note that the term "unlawful" is defined in § 13A-12-20, Ala.Code 1975, as "[n]ot specifically authorized by law," and is subsequently used as an adjective to describe gambling activities, not the state of mind of the gambler. An "unlawful gambling activity" would be gambling that has not been authorized by law. Yet to be guilty of the crime of gambling, § 13A-12-21 requires that a person knowingly profit from "unlawful gambling activities." I note § 13A-12-20 was enacted some three years after § 13A-2-4(b), which required strict liability to be clearly stated in any statute, if the Legislature intended to make the offense one of strict liability.
[2] The injustice of letting serious criminal liability turn on the fortuity of a death on the highway is illustrated by the following hypothetical examples set out by the court in Heck.

"Ex. 1: Suppose D's speedometer is off by 5 MPH. For the past hour he has been travelling along the freeway at [75] MPH, although his speedometer registers only [70] MPH. He should know (a jury decides) that his speedometer is slow, and thus should know that he is violating the law by speeding. D kills A, who is stopped by the roadside changing a tire and steps onto the highway while D is passing. D's violation of the maximum speed law caused A's death, for if D hadn't been speeding, A would have finished with his chore and gone before D arrived at that spot on the road. D is liable for vehicular homicide.
"Ex. 2: (Stated in the alternative). Suppose D inadvertently fails to dim his headlights, blinding A and causing him to run his car off the road and kill himself; or suppose D forgetfully neglects to turn on his lights before starting on a trip one night, with the result that A, while attempting to turn his vehicle onto the highway, is broad-sided and killed. Either way, D is guilty of vehicular homicide, and under the statutory scheme becomes a `criminal killer.'
"Ex. 3: In this example, we hypothecate that D is a reputable and law-abiding citizen driving to work one morning. He attempts to turn at an intersection with limited visibility, and fails to see a motorcycle approaching from the opposite direction at 55 MPH, 15 MPH over the speed limit. He is not aware of the motorcycle until it is too late, nor can his momentary inattention be characterized as a `gross deviation' from reasonable care in the circumstances. D may be found guilty of vehicular homicide.
"The possible contributory negligence of the victims in these cases will not prevent the defendants from being held criminally liable. This holds true even if the victim's contributing to the accident is greater than the defendant's, so as to bar the victim's estate from winning damages in a civil suit. The rule is that the contributory negligence of the victim is not a defense to a criminal charge of homicide by vehicle if the defendant's actions were a substantial factor in causing the death."
Commonwealth v. Heck, 341 Pa.Super. at 212-13, 491 A.2d at 226-27.