PATTERSON, Judge.
The appellant, Kerry Jonathan Kent, appeals his conviction for rape in the first degree, and his sentence of life imprisonment. Kent contends that the trial court erred to reversal when it admitted into evidence a photograph of him taken while he was incarcerated in the Lauderdale County jail as a result of a prior sodomy conviction. Specifically, he argues that the jury could infer from the photographs that he had a prior criminal record.
The state offered the photograph, which depicts the appellant with a beard, to rebut the appellant’s claim that he had never had a beard. The rape victim and her young niece, who was present during the crime, described the rapist as having a beard.
In analyzing the admissibility of photographs taken while an accused person is incarcerated, this court and the Alabama Supreme Court have traditionally relied on the three prerequisites found in United States v. Harrington, 490 F.2d 487 (2d Cir.1973). See Ex parte Long, 600 So.2d 982 (Ala.1992). To be admissible under Harrington, the following three prerequisites must be met:
“1. The Government must have a demonstrable need to introduce the photographs; and
“2. The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and
“3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.”
Harrington, 490 F.2d at 494. “[HJowever, the failure to meet one or more of these criteria would not necessarily result in reversible error.” Long, 600 So.2d at 989 (emphasis omitted).
Applying the first of the three Harrington factors, we find that the state demonstrated a need for the introduction of the photograph. The identity of the man who raped the young girl in the presence of her niece on December 12, 1990, was the main issue at trial. See Lewis v. State, 488 So.2d 1362, 1367 (Ala.Cr.App.1986). The appellant alleges in his brief that his trial counsel told the jury in his opening statement that the perpetrator was described as having a beard and that the appellant had never worn a beard; however, counsel’s argument is not contained in the record. During the cross-examination of the victim and her niece, the appellant’s trial counsel questioned the girls about the physical features of the perpetrator. The victim’s niece described the man as having a beard, while the victim stated that “[i]t seemed like he did.” Later, during the cross-examination of Travis Scott, the husband of a cousin of the appellant, and Dennis Grover, the appellant’s employer, the appellant’s trial counsel sought to establish that the appellant had néver worn a beard. Scott testified that, on December 18, 1990, he saw the appellant and that at that time he did not have a beard. He further testified that he had “never seen Kerry with a beard.” Grover stated that he “never saw him with a heavy enough beard where [he] would have recognized it — .”
Taking into account the defense's consistent pattern of questions relating to whether the appellant had a beard, it appears *397 obvious that the appellant was attempting to underscore the discrepancy between the varying descriptions of the perpetrator given by the two girls and the appellant’s in-court appearance. The photograph was offered by the state to demonstrate that the appellant did indeed have a beard at some point in time. Cf. Grace v. State, 431 So.2d 1331, 1334 (Ala.Cr.App.1982); Gross v. State, 395 So.2d 485 (Ala.Cr.App.1981). The fact that the photograph was taken on February 25, 1991, approximately two and one-half months after the rape, did not lessen its importance to the state. The defense did not limit its questions concerning the appellant’s facial hair, or lack thereof, to his appearance of the date of the rape. Therefore, we cannot say that the photograph depicting the appellant with a beard was so remote in time as to be irrelevant.
With regard to the second factor described in Harrington, supra, the appellant argues that the photograph depicted him in such a way as to suggest to the jury that he had a criminal record. It is undisputed that the photograph was taken by a police investigator while the appellant was in the Lauderdale County jail on a prior conviction. However, we find that the photograph was taken in such a way so as to minimize any inference that the appellant had a criminal history.
The photograph was distinguishable from the traditional “mugshot” photograph that is so commonly linked to an encounter with the police in that it was not composed of juxtaposed frontal and profile poses. Instead, the photograph was composed of a simple frontal shot. The photograph was also free of any type of police markings on either the front or the back. In addition, the picture itself gave no hint that the appellant was in jail. In the photograph, the appellant is wearing a simple white T-shirt without markings. The background depicts a tile wall with horizontal and vertical lines on it. Compare Parker v. State, 587 So.2d 1072 (Ala.Cr.App.1991) (photograph depicting frontal view in front of height chart held not to indicate prior criminal record); Williamson v. State, 384 So.2d 1224, 1231 (Ala.Cr.App.1980). Indeed, a viewing of the photograph prompted the trial court to comment as follows: “In looking at the photograph, it doesn’t appear to show that he’s in jail; it does show some lines. I couldn’t tell by looking at it that he was in jail.” We agree with the trial court. Nothing in the photograph would indicate that the appellant was jailed at the time the photograph was taken.
The final factor in Harrington, supra, compels us to question whether the manner in which the photograph was introduced into evidence drew attention to the source or implications of the photograph. We find that it did not. The foundation that was laid by the state for the introduction of the photograph into evidence is found in the record as follows:
“Q Now at some point in the investigation, did you have an occasion to see or talk with the defendant in this case, Kerry Kent?
“A Yes, sir.
“Q And when did you first see him?
“A February 25th.
“Q And was that in Lauderdale County?
“A Yes, sir.
“Q Did you have an occasion to make a photograph of him at that time?
“A Yes, sir.
“Q I show you what has been marked for identification purposes as State’s Exhibit No. 10 and ask if you can identify what that is, please, ma’am?
“A Yes, sir, that is the photograph I took of Mr. Kent on February 25th.
“Q Does that fairly and accurately portray the way he appeared on that occasion?
“A Yes, sir.
“MR. ALYERSON: We offer State’s Exhibit 10 at this time.”
When the photograph was offered into evidence, the appellant objected and arguments were heard outside the presence of the jury. When the jury returned, the trial court simply overruled the appellant’s objection and admitted the photograph into evidence.
*398 It is clear from the record that neither the trial court nor the state did anything to indicate to the jury that the photograph was anything more than a picture of the appellant. The state’s witness made no mention of the fact that it was taken while the appellant was incarcerated. Thus, the manner of introduction did not draw “particular attention to the source or implications” of the photograph.
Because the admission of the appellant’s photograph complied with all three Harrington prerequisites, the trial court properly overruled the appellant’s objection and allowed the jury to view the picture.
We also find that the appellant’s contention that the photograph was taken too long after the date of the rape to be relevant is without merit. As we noted earlier, the appellant himself attempted to show that he had never worn a beard before or after December 12, 1990. Thus, the state had every right to rebut the contention by showing that the appellant did indeed have a beard sometime after the incident in question.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.