[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 187 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 188 
The appellant, Joe Nathan James, Jr., was convicted of capital murder for killing Faith Hall. The murder was made capital because the appellant committed it during a burglary. See
§ 13A-5-40(a)(4), Ala. Code 1975. After a sentencing hearing, the jury recommended, by a vote of 12-0, that the appellant be sentenced to death. The trial court accepted the jury's recommendation and sentenced the appellant to death. The appellant filed two motions for a new trial — one pro se and one through counsel — which were denied by operation of law. See
Rule 24.4, Ala.R.Crim.P. This appeal follows.
Because the appellant does not challenge the sufficiency of the evidence to support his conviction, a lengthy recitation of the facts of the case is not necessary. However, we have reviewed the evidence, and we conclude that it is sufficient to support the appellant's conviction. The trial court summarized the relevant facts of this case as follows:
 "The [appellant], a former boyfriend of the victim, Faith Hall, had been stalking and threatening Ms. Hall before her death. On the evening of August 15, 1994, as Ms. Hall and a friend returned to the friend's apartment, they saw the [appellant] following them in his vehicle. When they saw the [appellant] they began to run to the apartment.
 "Despite their attempts to hold the front door closed, the [appellant] forced his way into the apartment. Ms. Hall began to scream, as the [appellant] came in with a pistol in his hand. When she couldn't calm him down, she began to run for the front door. The [appellant] shot at her, but missed. Ms. Hall turned and ran toward the bathroom as [appellant] followed and shot her in the head, chest, and abdomen. The [appellant] ran out the back door and left in his automobile. Ms. Hall died from her wounds. The [appellant] was arrested in California."
(Supp. R. 7.) Additional facts are included, as necessary, throughout this opinion.
In his brief, the appellant raises several issues that he did not first present *Page 189 
to the trial court. His failure to object will not bar our review of an issue in a case involving the death penalty. However, it will weigh against any claim of prejudice he may allege. SeeEx parte Kennedy, 472 So.2d 1106 (Ala.), cert. denied,474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). Rule 45A, Ala.R.App.P., provides:
 "In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review . . . whenever such error has or probably has adversely affected the substantial right of the appellant."
"[This] plain-error exception to the contemporaneous-objection rule is to be `used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" UnitedStates v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046,84 L.Ed.2d 1 (1985) (quoting United States v. Frady, 456 U.S. 152, 163
n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 n. 14 (1982)).
 I.
The appellant's first argument is that the trial court erroneously admitted into evidence police reports that contained inadmissible hearsay within hearsay. (Issue II in the appellant's brief to this court.) Because the appellant did not present this argument to the trial court, we review it for plain error. See
Rule 45A, Ala.R.App.P.
At the beginning of the trial, the State marked all of its exhibits, including four police reports, for identification. (F.R. 16.)[1] However, although copies of the reports are included in the record on appeal, the record does not show that the reports were admitted into evidence during the trial. Therefore, the appellant's argument is moot. See Perkins v.State, [Ms. CR-93-1931, November 19, 1999] ___ So.2d ___, ___ (Ala.Crim.App. 1999). Accordingly, we do not find any error, much less plain error, in this regard.
 II.
The appellant's second argument is that the trial court erroneously admitted what he alleges was irrelevant, unfairly prejudicial evidence that did not have any probative value. (Issue IV in the appellant's brief to this court.) Specifically, he contends that the trial court erroneously admitted:
 "1. Photographs which contained graphic depictions of wounds not caused by [him].
 "2. Testimony of the medical examiner about surgical or medical treatment of the victim, needle puncture sights, puncturing the jugular vein, puncture sites on the wrists, a Foley catheter, a colostomy site, etc.
 "3. Photographs that were admitted and then magnified 10 or more times in a slide projection on a screen.
 "4. Testimony of the medical examiner of a tube that entered the victims nostril when said tube was not introduced by [him].
 "5. Testimony of the medical examiner of a sewn surgical incision where [doctors] have explored.
 "6. Testimony of the medical examiner that a wound might have been incapacitating if it was left untreated.
"7. Evidence of drug tests performed on the victim." *Page 190 
(Appellant's brief at p. 18.) The appellant did not object to the admission of any of this evidence during his trial. Therefore, we review the admission of this evidence for plain error. See Rule 45A, Ala.R.App.P.
The gist of the appellant's argument is that the trial court should not have admitted photographs and slides of the victim that depicted wounds caused by medical treatment and should not have allowed the medical examiner to testify about that medical treatment. In reviewing the photographs and slides, we are guided by the following principles:
 "Appellant's final contention of error is that the trial court erred in allowing the prosecutor, during the testimony of the medical examiner, to illustrate the nature of the victim's wounds by use of 17 photographic slides of the victim's body. Appellant argues that these slides were irrelevant, inflammatory, inaccurate, misleading, and cumulative, and that the trial court should not have allowed the medical examiner to use them as an aid to his testimony.
 "Generally, photographs are admissible into evidence in a criminal prosecution `if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge.' Magwood v. State, 494 So.2d 124, 141 (Ala.Cr.App. 1985), aff'd, 494 So.2d 154 (Ala. 1986), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). See also Woods v. State, 460 So.2d 291 (Ala.Cr.App. 1984); Washington v. State, 415 So.2d 1175 (Ala.Cr.App. 1982); C. Gamble, McElroy's Alabama Evidence § 207.01(2) (3d ed. 1977).
 "It has long been the law in Alabama that `[p]hotographs which show external wounds in the body of a deceased victim, even though they are cumulative and based on undisputed matters, are admissible. The fact that they are gruesome is not grounds to exclude them so long as they shed light on the issues being tried.' Burton v. State, 521 So.2d 91, 92
(Ala.Cr.App. 1987). See also Kinder v. State, 515 So.2d 55
(Ala.Cr.App. 1986). The fact that a photograph is gruesome and ghastly is no reason to exclude it from the evidence, so long as the photograph has some relevancy to the proceedings, even if the photograph may tend to inflame the jury. Magwood v. State, supra, 494 So.2d at 141. See also Hutto v. State, 465 So.2d 1211 (Ala.Cr.App. 1984); Jones v. State, 439 So.2d 776 (Ala.Cr.App. 1983); Godbolt v. State, 429 So.2d 1131 (Ala.Cr.App. 1982).
 "This rule of law applies not only to photographs, but to photographic slides as well. Goffer v. State, 430 So.2d 896 (Ala.Cr.App. 1983). In Goffer, we wrote as follows:
"'. . . .
 "'. . . The slides were just enlargements of photographs and the wounds were shown in relation to the deceased. The slides gave the jury a better understanding of the nature and gravity of the deceased's injuries, and we do not believe the slides distorted the injuries or misled the jury in any way.'
"430 So.2d at 898-99.
". . . .
 "Appellant also contends that the slides were misleading to the jury because they revealed postmortem sloughing of skin and other signs of decomposition. Specifically, he argues that the slides revealed `circumstances of death that had nothing to do with the defendant's *Page 191 
character, the nature of the crime, or an appropriate sentence.' However, this evidence of decomposition was entirely separate from the stab wounds to which the jury's attention was focused, and the medical examiner carefully pointed out to the jury these other factors and identified them as being due to post-mortem deterioration of the body. Thus, we see no reason for the jury to have been misled by this aspect of the slides.
 "Appellant further argues that, because several slides showed wounds into which probes had been inserted, the slides did not accurately depict the wounds. The State argues, and we agree, that while probes were shown in some wounds, they were inserted for the sole purpose of illustrating the depth and nature of the wounds, relevant factors in determining whether the crime was especially heinous, atrocious, or cruel. The probes were consistently pointed out to the jury, and their function was explained. Moreover, the use of the probes did not distort the size of the wounds so that they appeared larger than they actually were; thus, this case is distinguished from Wesley v. State, 32 Ala. App. 383, 26 So.2d 413 (1946). Therefore, the jury could not have been misled by the insertion of probes into certain of the wounds.
 "Finally, appellant argues that the slide presentation should not have been allowed because the slides were cumulative of the photographs, which were received into evidence. As we stated above, however, such evidence is `admissible even though they are cumulative evidence based on an undisputed matter.' Kinder v. State, supra, 515 So.2d at 64."
Bankhead v. State, 585 So.2d 97, 109-11 (Ala.Crim.App. 1989) (footnote omitted), aff'd in relevant part, 585 So.2d 112 (Ala. 1991), rev'd on other grounds, 625 So.2d 1146 (Ala. 1993). Additionally, autopsy photographs, although gruesome, are admissible to show the extent of a victim's injuries. See Dabbsv. State, 518 So.2d 825 (Ala.Crim.App. 1987). Finally, the fact that photographs depict medical equipment used to treat the victim does not necessarily render them inadmissible. SeeScroggin v. State, 529 So.2d 1025, 1028 (Ala.Crim.App. 1988).
After reviewing the photographs that were admitted into evidence in this case, we conclude that they were relevant to show the injuries the victim suffered. Because the victim had undergone extensive medical treatment before she died, the photographs of the wounds also show the results of some of that treatment. See Lee v. State, 562 So.2d 657 (Ala.Crim.App. 1989). However, in discussing the victim's wounds, the medical examiner carefully distinguished the wounds caused by the appellant from those caused as a result of medical treatment. SeeBankhead, supra. The medical examiner's testimony regarding the medical treatment the victim received and the photographs showing the results of that treatment were relevant to show the condition of the victim's body when the medical examiner received it. SeeLee, supra. Finally, the fact that the prosecution projected slides of the photographs onto a screen did not unfairly prejudice the appellant. Rather, it merely made it possible for the jury to view the photographs while the medical examiner explained the wounds. See Bankhead, supra. Therefore, we do not find any error, much less plain error, in this regard.
 III.
The appellant's third argument is that his attorneys rendered ineffective *Page 192 
assistance during his trial. (Issue III in the appellant's brief to this court.) Specifically, he contends that his attorneys rendered ineffective assistance because they:
 1) did not object to the admission of photographs that allegedly contained extraneous, irrelevant evidence;
 2) did not object to the testimony of the medical examiner on the ground that he had not been recognized as an expert witness;
 3) did not object to the medical examiner's testimony about medical procedures to which the victim was subjected after she was shot;
 4) did not object when the prosecution projected slides of photographs of the victim's wounds onto a screen;
 5) did not object when the medical examiner introduced evidence regarding a nasogastric tube that had been used to treat the victim;
 6) did not object when the medical examiner introduced evidence regarding an intravenous line or vascular catheter that had been used to treat the victim;
 7) did not object when the medical examiner introduced evidence regarding a needle mark associated with an intravenous line that was used to treat the victim;
 8) did not object when the medical examiner introduced evidence regarding a surgical incision on the victim's abdomen;
 9) did not object when the medical examiner introduced evidence that showed "`some large bowel on the upper-right aspect of the abdomen . . . where the surgeons had put a colostomy site in position'" while treating the victim;
 10) did not object when the medical examiner commented that one of the appellant's wounds might not have been incapacitating "`unless it were just not treated'";
 11) did not object when the medical examiner introduced evidence regarding drug tests that had been performed on the victim;
 12) did not object to the narrative form of the medical examiner's testimony; and
13) did not object to "rampant hearsay testimony."
(Appellant's brief at p. 13-17.)[2] The appellant raises many of these claims for the first time on appeal. Ordinarily, those claims would be procedurally barred because he did not first present them to the trial court. See Brown v. State,701 So.2d 314 (Ala.Crim.App. 1997); Ex parte Ingram, 675 So.2d 863 (Ala. 1996). However, because the appellant was sentenced to death, we will review those claims under the plain error rule. See Rule 45A, Ala.R.App.P.; Bush v. State, 695 So.2d 70 (Ala.Crim.App. 1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969,118 S.Ct. 418, 139 L.Ed.2d 320 (1997).
 "[T]o prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged test set out by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 "`First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" *Page 193 
guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.'
"Id. at 687, 104 S.Ct. at 2064.
 "`The performance component outlined in Strickland is an objective one: that is, whether counsel's assistance, judged under "prevailing professional norms," was "reasonable considering all the circumstances."' Daniels v. State, 650 So.2d 544, 552 (Ala.Cr.App. 1994) (quoting Strickland, 466 U.S. at 688, 104 S.Ct. at 2065). Once a defendant has identified the specific acts or omissions that allegedly were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall outside the wide range of professionally competent assistance. Id.
 "When reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable. Hallford v. State, 629 So.2d 6 (Ala.Cr.App. 1992), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994); Luke v. State, 484 So.2d 531 (Ala.Cr.App. 1985).
 "`Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'
 "Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (citations omitted). See Ex parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987).
 "And, even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless it is also established that `there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
 "In an ineffective assistance of counsel claim, the burden is on the claimant to show that his counsel's assistance was ineffective. Ex parte Baldwin, 456 So.2d 129
(Ala. 1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985)."
McNair v. State, 706 So.2d 828, 839 (Ala.Crim.App. 1997), cert. denied, 523 U.S. 1064, *Page 194 118 S.Ct. 1396, 140 L.Ed.2d 654 (1998).
We have reviewed the appellant's allegations concerning his trial counsel's performance, and we conclude that he has not satisfied his burden of proof under Strickland with respect to any of his ineffective-assistance-of-counsel claims. Even though the trial court did not specifically recognize the medical examiner as an expert, he was clearly qualified to be an expert witness. Also, the appellant has not shown that he was prejudiced by the form of the medical examiner's testimony. Further, as we stated in Part II of this opinion, the photographs and slides of the victim's body and the medical examiner's testimony about medical treatment the victim received after she was shot were relevant. Finally, even though the appellant does not specify what testimony he contends constituted "rampant hearsay," we have reviewed the record and have not found any error in this regard. The appellant has not shown that his counsel's performance was deficient and that that allegedly deficient performance prejudiced his defense.See Strickland, supra; McNair, supra. Rather, he has simply made bare allegations that he has not supported factually. Therefore, he is not entitled to relief on his ineffective-assistance-of-counsel claims.
 IV.
The appellant's fourth argument is that the trial court erroneously admitted into evidence a photographic lineup that allegedly contained a mug shot of him. (Issue V in the appellant's brief to this court.)
 "Mug shots are generally inadmissible in a criminal trial because the jury may infer from them that the defendant has a criminal history. Gross v. State, 395 So.2d 485
(Ala.Crim.App. 1981). However, under certain circumstances, admitting a mug shot into evidence does not constitute reversible error.
 "We find no cases from this Court directly on the point of the admissibility of mug shots, but the Court of Criminal Appeals has, in numerous cases, relied on the three prerequisites established in United States v. Harrington, 490 F.2d 487 (2d Cir. 1973), for a ruling that the introduction of a `mug shot' photograph does not result in reversible error. See, e.g., Williams v. State, 546 So.2d 705
(Ala.Crim.App. 1989); Jones v. State, 451 So.2d 389
(Ala.Crim.App. 1984); Gross v. State, supra; Williamson v. State, 384 So.2d 1224 (Ala.Crim.App. 1980); Holsclaw v. State, 364 So.2d 378 (Ala.Crim.App. 1978); but see Brown v. State, 229 Ala. 58, 155 So. 358 (1934) (fact that defendant was in jail when photograph was taken did not present reversible error as to admission of the photograph). The three requirements set out in Harrington are:
 "`1. The Government must have a demonstrable need to introduce the photographs; and
 "`2. The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and
 "`3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs.'
 "Harrington, 490 F.2d at 494. We conclude that these three inquiries are appropriate criteria to consider when determining the admissibility of a mug shot; however, the failure to meet one or more of these criteria would not necessarily result in reversible error. We shall still apply Rule 45, Ala.R.App.P., *Page 195 
when deciding whether to reverse or set aside a judgment for error."
Ex parte Long, 600 So.2d 982, 989 (Ala. 1992) (emphasis in original).
In this case, the prosecution introduced the lineup into evidence to establish the appellant's identity as the perpetrator. After the appellant shot the victim, he left the crime scene and the state. Approximately four months later, he was arrested in California. When law enforcement officers arrived at the crime scene and interviewed witnesses, they determined that the appellant was a suspect in the case. That same day, Detective Mike Walker prepared a photographic lineup from which an eyewitness identified the appellant as the shooter. Nearly five years later, the eyewitness identified the appellant in court as the person who shot the victim. However, on cross-examination, the defense attempted to question her credibility, including her identification of the appellant as the shooter. Therefore, the prosecution had a demonstrable need to introduce the lineup, including the photograph of the appellant, into evidence. SeeGuthrie v. State, 616 So.2d 914 (Ala.Crim.App. 1993).
Also, the photograph of the appellant was not a typical mug shot and did not imply that the appellant had a prior criminal record. Unlike typical mug shot photographs with juxtaposed frontal and profile shots, the photograph was only a frontal picture of the appellant. When he objected at trial to the admission of the lineup into evidence, the appellant contended that the lineup contained "extraneous material" and that "it was obvious that the photographs used were what are commonly referred to as mug shots." (H.R. 155, 164.) During oral arguments before this court, defense counsel also alleged that the lineup contained additional information such as the appellant's name, height, and weight and a notation about the Birmingham Police Department. However, we have reviewed the lineup, and we conclude that these assertions are erroneous. The lineup includes six photographs of black males who have similar physical characteristics. There are not any police markings on the photographs, and the photographs show the individuals wearing street clothes, not jail or prison clothes. There is not anything about the photograph of the appellant that would indicate that he has a prior criminal record.See Kent v. State, 621 So.2d 395 (Ala.Crim.App. 1993).
Finally, the manner in which the photographic lineup was introduced into evidence did not draw particular attention to the source or implications of the photographs. When it introduced the lineup, the prosecution simply had Walker explain that the eyewitness had identified the appellant from a photographic lineup as the man who shot the victim. The prosecution did not question Walker about where he had obtained the photographs or what kind of photographs he had used. Finally, the prosecution quickly covered the testimony about the photographic lineup and did not at any time refer to the photographs as mug shots. See Williams v.State, 546 So.2d 705 (Ala.Crim.App. 1989). From the record, it appears that the only mention of a "mug shot" was made by defense counsel out of the hearing of the jury. Therefore, the prosecution did not draw particular attention to the source or implications of the photographs.
For these reasons, the trial court did not err in admitting the photographic lineup into evidence. Accordingly, the appellant's argument is without merit.
 V.
The appellant's fifth argument is that the trial court improperly allowed the prosecution to ask leading questions *Page 196 
during the direct examination of three of its witnesses. (Issue VII in the appellant's brief to this court.)
 "'[L]eading questions may be allowed on direct examination, depending on the circumstances of the particular case.' Williams v. State, 568 So.2d 354, 357 (Ala.Cr.App. 1990). A trial court's decision to allow the state to ask leading questions of its own witness will not be reversed `except for a flagrant violation.' Williams, 568 So.2d at 356."
Grimsley v. State, 678 So.2d 1197, 1210 (Ala.Crim.App. 1996). The appellant refers to four places in the record in which counsel objected on the ground that the prosecution was leading a witness. We have reviewed those instances, and we conclude that the prosecution did not improperly question the witnesses. Even though the questions were leading, the prosecution's approach was apparently an attempt to jog the memories of the witnesses because the murder occurred on August 15, 1994, and the trial began on January 4, 1999. See Grimsley, supra. In the first instance, even after the prosecution asked a leading question, the witness could not remember the details about which the prosecution specifically asked. (F.R. 199.) In two other instances, the victim's 11-year-old daughter, who was 6 years old at the time of the murder, was having trouble remembering whether the appellant had hurt her mother prior to the murder. (H.R. 17-19.) Based on the age of the witness, the trial court allowed the prosecution some leeway in questioning the witness. However, even after the prosecution asked her a leading question about one incident of abuse, she testified that she could not remember the incident. (H.R. 19.) Finally, in the last instance, the prosecutor elicited testimony from the victim's grandmother that the appellant had previously threatened the victim. However, the appellant did not object until after the question had been asked and answered and did not move to exclude the witness' answer. (H.R. 76-77.) Therefore, he did not preserve this issue for our review. SeeWilson v. State, 651 So.2d 1119 (Ala.Crim.App. 1994). Nevertheless, reviewing this instance for plain error, we conclude that there was not any plain error in this regard because the question did not lead to the admission of any illegal evidence and did not prejudice the appellant. See Rule 45A, Ala.R.App.P.;George v. State, 717 So.2d 827 (Ala.Crim.App.), rev'd on other grounds, 717 So.2d 844 (Ala. 1996), on remand, 717 So.2d 849
(Ala.Crim.App. 1997), aff'd, 717 So.2d 858 (Ala.), cert. denied, 525 U.S. 1024, 119 S.Ct. 556, 142 L.Ed.2d 462 (1998). In fact, we conclude that error, if any, in the questioning was harmless because the victim's ex-husband had also testified that the appellant had previously threatened the victim. See Rule 45, Ala.R.App.P. For these reasons, the trial court did not abuse its discretion in allowing the prosecution to ask leading questions in these instances. Accordingly, the appellant's argument is without merit.
 VI.
The appellant's sixth argument is that Alabama's procedural rules requiring that a defendant file a motion for a new trial in the trial court before his appellate counsel receives a transcript of his trial violates the defendant's rights to counsel and due process. (Issue VI in the appellant's brief to this court.) Rule 24.1(b), Ala.R.Crim.P., requires a defendant to file a motion for a new trial no later than 30 days after the trial court pronounces sentence. Rule 11(b), Ala.R.App.P., requires a court reporter to file the trial transcript with the circuit clerk within 56 days after the notice of appeal is filed. The appellant contends that these rules infringe upon a defendant's ability to present ineffective-assistance-of-counsel, *Page 197 Brady,[3] juror-misconduct, weight-and sufficiency-of-the-evidence, and competency claims. Therefore, he urges this court to "[c]hange the Alabama rules such that the new trial motion does not have to be filed until thirty days after the record is certified (and therefore the trial transcript is available to defendant) and make the deadlines for direct appeal some time after the new trial motion receives a ruling." (Appellant's brief at p. 29.)
The Supreme Court of Alabama promulgates the Alabama Rules of Criminal Procedure and the Alabama Rules of Appellate Procedure pursuant to its rule-making power under § 6.11 of the Judicial Article (Amendment 328 to the Alabama Constitution of 1901), and those rules govern all proceedings before this court. See
Committee Comments to Rule 1.1, Ala.R.Crim.P., and Rule 1, Ala.R.App.P.
 "The decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals, and the decisions and proceedings of such courts of appeals shall be subject to the general superintendence and control of the Supreme Court as provided by Constitutional Amendment No. 328."
§ 12-3-16, Ala. Code 1975. Therefore, this court does not have the authority to change, alter, or amend the Alabama Rules of Criminal Procedure or the Alabama Rules of Appellate Procedure. Accordingly, we decline the appellant's request that we change the rules regarding this procedure. Furthermore, the appellant has not specifically alleged or shown that he was prejudiced by this procedure. Consequently, his argument in this regard is without merit.
 VII.
Pursuant to § 13A-5-53, Ala. Code 1975, we must address the propriety of the appellant's conviction and sentence of death. The appellant was indicted for, and convicted of, capital murder because he killed a person during the course of a burglary. See
§ 13A-5-40(a)(4), Ala. Code 1975.
The record does not reflect that the sentence of death was imposed as a result of the influence of passion, prejudice, or any other arbitrary factor. See § 13A-5-53(b)(1), Ala. Code 1975.
The trial court found that the aggravating circumstances outweighed the mitigating circumstances. Specifically, it found that two aggravating circumstances existed: 1) the capital offense was committed by a person under sentence of imprisonment,see § 13A-5-49(1), Ala. Code 1975, and 2) the capital offense was committed while the appellant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary, or kidnapping, see § 13A-5-49(4), Ala. Code 1975. The trial court did not find that any statutory or nonstatutory mitigating circumstances existed. The sentencing order shows that the trial court weighed the aggravating circumstances and the lack of mitigating circumstances and correctly sentenced the appellant to death. Its decision is supported by the record, and we agree with its findings.
Section 13A-5-53(b)(2), Ala. Code 1975, requires us to weigh the aggravating and mitigating circumstances independently to determine the propriety of the appellant's death sentence. After independently weighing the aggravating circumstances and the lack of mitigating circumstances, we find that the death sentence is appropriate. *Page 198 
As required by § 13A-5-53(b)(3), Ala. Code 1975, we must determine whether the appellant's sentence is disproportionate or excessive when compared to the penalties imposed in similar cases. The appellant killed the victim during the course of a burglary. Similar crimes are being punished by death throughout this state.See Neal v. State, 731 So.2d 609 (Ala.Crim.App. 1997), aff'd,731 So.2d 621 (Ala.), cert. denied, 527 U.S. 1027,119 S.Ct. 2377, 144 L.Ed.2d 780 (1999); Knotts v. State, 686 So.2d 431
(Ala.Crim.App. 1995), aff'd, 686 So.2d 486 (Ala. 1996), cert. denied, 520 U.S. 1199, 117 S.Ct. 1559, 137 L.Ed.2d 706 (1997);Thomas v. State, 539 So.2d 375 (Ala.Crim.App.), aff'd,539 So.2d 399 (Ala. 1988), cert. denied, 491 U.S. 910, 109 S.Ct. 3201,105 L.Ed.2d 709 (1989). Consequently, we find that the sentence of death is neither disproportionate nor excessive.
Finally, we have searched the entire record for any error that may have adversely affected the appellant's substantial rights, and we have not found any. See Rule 45A, Ala.R.App.P.
For the above-stated reasons, we affirm the appellant's conviction and sentence of death.
AFFIRMED.
Long, P.J., and McMillan, Cobb, and Fry, JJ., concur.
[1] Two court reporters transcribed the appellant's trial. Citations to the record beginning with "F.R." refer to those portions of the trial transcribed by court reporter Suzanne Frazier, and citations beginning with "H.R." refer to those portions transcribed by court reporter Kathryn Hicks.
[2] In his reply brief to this court, the appellant attempts to raise additional ineffective-assistance-of-counsel claims. An appellant may not raise new issues for the first time in a reply brief. See McCall v. State, 565 So.2d 1163 (Ala.Crim.App. 1990). Nevertheless, we have searched the record for plain error, and we conclude that the appellant's allegations in this regard are without merit.
[3] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963).